(329 P.3d 523)
No. 108,885

STATE OF KANSAS, *Appellee*, v. AMI LATRICE SIMMONS, *Appellant*.

Opinion filed June 27, 2014.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Charles Ault-Duell*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., BRUNS and POWELL, JJ.

STANDRIDGE, J.: Ami Latrice Simmons appeals from her conviction for failing to register as a drug offender. Specifically, Simmons argues retroactive application of 2007 legislation that requires her to register as a drug offender for a prior conviction that did not require registration at the time she originally was sentenced (1) illegally modifies the original sentence imposed and (2) violates the Ex Post Facto Clause of the United States Constitution. She also challenges the $200 DNA database fee imposed by the district court. Because an offender's statutory duty to register is imposed automatically by operation of law, without court intervention, as a collateral consequence of judgment with a stated objective of protecting public safety and not punishment, we necessarily conclude that the registration requirements—no matter when imposed—are not part of an offender's sentence. As such, Simmons' illegal sentence and ex post facto claims both fail. For the reasons stated below, her challenge to the $200 DNA database fee imposed by the district court also fails.

## FACTS

Simmons was convicted and sentenced in 2005 after pleading guilty to possession of cocaine with intent to distribute and sale of cocaine. When Simmons committed those crimes—and even when she was sentenced—the Kansas Offender Registration Act (KORA) did not require drug offenders to register. In 2007, however, KORA was amended to add certain drug offenders to the registration list. L. 2007, ch. 183, sec. 1. Although Simmons complied with her registration requirements until May 2011, she was charged in June 2011 with failing to register as required. Simmons filed a motion to dismiss the charges on grounds that the registration requirement violated "the Ex Post Facto Clause of the United States and Kansas Constitutions," but the motion was denied.

Waiving her right to a jury trial but reserving the right to appeal, Simmons' case went to a bench trial on the following stipulated facts.

"In March of 2005, the State filed a 13 count complaint against Ami Simmons in Saline County Case No. 2005 CR 359. The complaint alleged, among other things, that Simmons possessed cocaine with the intent to distribute it and that Simmons in fact sold cocaine, both in violation of K.S.A. 65-4161(a).

"On June 21, 2005, Simmons entered a guilty plea to possession of cocaine with the intent to distribute and the sale of cocaine. She was sentenced to 30 months in prison with 24 months of post-release supervision, granted a border-box disposition to probation, and placed on 18 months of probation in October of 2005.

"Simmons' probation in 05 CR 359 was eventually revoked in May 2007, and Simmons was remanded to serve her 30-month prison sentence. Simmons was incarcerated from June 21, 2007, to October 22, 2008. She began serving her 24-month post-release supervision period when she was released.

"The Kansas Offender Registration Act (KORA) was amended effective July 1, 2007, L. 2007, ch.183, §1, to include offenders who had been convicted of K.S.A. 65-4161 offenses, including the sale of cocaine. K.S.A. 22-4902(a)(11)(C).

"Under K.S.A. 22-4906(a), Simmons' KORA registration obligations with the Saline County Sheriff's Office began on the date of her parole, October 22, 2008.

"On May 31, 2011, a Saline County Deputy Patrick Queen attempted to serve Simmons notice that she had failed to attend her May 2011 KORA compliance visit at her last reported address . . . . On that date, Deputy Queen was advised by the tenant . . . that Simmons no longer lived at that address. Simmons did not report her change of address.

"On June 1, 2011, Simmons called Saline County Sheriff's Office Compliance Officer Michelle McMillan by phone and advised that the missed visit was an oversight. McMillan instructed Simmons to come in immediately to complete her May 2011 compliance visit. Simmons did not reveal her location during the call.

"Beginning in December 2008 and continuing until June 8, 2011, Simmons acknowledged her registration responsibilities on 11 prior occasions, and she provided invalid addresses on 5 prior occasions to McMillan.

"On June 8, 2011, no reported telephone numbers for Simmons were valid, attempts to contact her through her former parole officer, Shawn Homan, were unsuccessful, and she had not completed her May 2011 compliance visit."

The district court found Simmons guilty of failing to register as required by KORA.

## ANALYSIS

*Illegal sentence*

Under K.S.A. 22-3504(1), an illegal sentence is where (1) the court lacked jurisdiction to sentence the defendant, (2) the character or the term of the punishment imposed as part of the sentence did not conform to the statute, or (3) the sentence was am-

biguous as to how it was to be served. *State v. Sims*, 294 Kan. 821, 825, 280 P.3d 780 (2012). Simmons argues her 2005 sentence was rendered illegal by the 2007 KORA amendments, which retroactively imposed upon her the requirement to periodically register as a drug offender. But Simmons' argument begs the question in that it assumes that the drug offender registration requirement is considered a part of her criminal sentence. For the reasons stated below, we find that it is not.

Resolution of this issue requires statutory construction. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Johnson*, 297 Kan. 210, 215, 301 P.3d 287 (2013).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). Generally, criminal statutes are strictly construed in favor of the accused. That rule is constrained by the rule that the interpretation of a statute must be reasonable and sensible in order to give effect to the legislative design and intent of the law. The rule of lenity arises only when there is any reasonable doubt as to meaning of the statute. *State v. Cameron*, 294 Kan. 884, 899, 281 P.3d 143 (2012).

K.S.A. 2013 Supp. 22-4902(a) of the registration act defines an "offender" as, among other things, a drug offender. Relevant here, the term "drug offender" is further defined in subsection (f) as:

- A person who, on or after July 1, 2007, is convicted of K.S.A. 65-4161; or
- A person who, on or after July 1, 2007, has been convicted of an offense that is comparable to any crime defined in the subsection, which includes K.S.A. 65-4161. See K.S.A. 2013 Supp. 22-4902(f)(1)(C) and (f)(2).

Before it was repealed in 2009, K.S.A. 65-4161 made it a crime to sell, offer for sale, or possess with intent to sell any opiates,

opium, or narcotic drugs. Here, Simmons entered a guilty plea in 2005 to charges that she possessed cocaine with the intent to distribute and sold cocaine, both in violation of K.S.A. 65-4161(a); accordingly, she fits the definition of a drug offender, and thus an offender, under the registration act.

K.S.A. 2013 Supp. 22-4906(a)(1) requires offenders convicted of certain offenses to register for 15 years from the most recent of either the date of parole, discharge, or release or, if not confined, from the date of conviction. The list of specified offenses includes selling, offering for sale, or having in such person's possession with intent to sell any opiates, opium, or narcotic drugs as defined in K.S.A. 65-4161, prior to its repeal. See K.S.A. 2013 Supp. 22-4906(a)(1)(P). As a drug offender who, on or after July 1, 2007, had been convicted and confined for selling a narcotic drug, Simmons is now statutorily required to register as an offender for a period of 15 years from the date she was released from confinement.

Although conceding that if convicted and sentenced for her crimes today she would be subject to the current version of the statute and required to register, Simmons' claim of illegal sentence is grounded in the fact that she was not required to register as a drug offender when she was convicted for her crimes. And Simmons is factually correct; based on the underlying crime of her conviction, she did not fit the definition of an offender under the 2005 version of the registration act. Thus, unlike most offenders who object to retroactive application of legislative amendments to KORA, there is no court order or journal entry in this case imposing any registration requirement on Simmons at all. In the absence of a court order, the question of whether the requirement to register is part of an offender's sentence turns on whether there is a statutory procedure for imposing the registration requirement on an offender like Simmons, who has never been subject to a court order to register.

In May 2007, Simmons' probation was revoked and she was remanded to serve her underlying prison sentence. By the time she was released from prison in 2008, the offender registration statute had been amended to make her subject to a 10-year postrelease

registration requirement. K.S.A. 22-4906(a)(1). Pursuant to K.S.A. 22-4905(a)(1), the staff of the facility where Simmons was confined was required to inform her about the duty to register before she was released. Under subsection (a)(2)(A) of this statute, the staff of the facility was also required before she was released to:

"(i) Explain the duty to register and the procedure for registration;

"(ii) obtain the information required for registration as provided in K.S.A. 22-4907 and amendments thereto;

"(iii) inform the offender that the offender must give written notice of any change of address within 10 days of a change in residence to the law enforcement agency where last registered and the Kansas bureau of investigation;

"(iv) inform the offender that if the offender changes residence to another state, the offender must inform the law enforcement agency where last registered and the Kansas bureau of investigation of such change in residence and must register in the new state within 10 days of such change in residence;

"(v) inform the offender that the offender must also register in any state or county where the offender is employed, carries on a vocation or is a student;

"(vi) inform the offender that if the offender expects to or subsequently becomes enrolled in any institution of higher education in the state of Kansas on a full-time or part-time basis or have any full-time or part-time employment at an institution of higher education in the state of Kansas, with or without compensation, for more than 14 days or an aggregate period exceeding 30 days in one calendar year, the offender must provide written notice to the Kansas bureau of investigation within 10 days upon commencement of enrollment or employment;

"(vii) inform the offender that if there is any change or termination in attendance or employment, at an institution of higher education, the offender must provide written notice to the Kansas bureau of investigation within 10 days of the change or termination;

"(viii) inform the offender of the requirement of an annual driver's license renewal pursuant to K.S.A. 8-247, and amendments thereto, and an annual identification card renewal pursuant to K.S.A. 2007 Supp. 8-1325a, and amendments thereto; and

"(ix) require the offender to read and sign the registration form which shall include a statement that the requirements provided in this subsection have been explained to the offender." K.S.A. 22-4905(a)(2)(A).

In the current version of KORA, the corresponding duties and responsibilities of staff members at the correctional facility are set forth in K.S.A. 2013 Supp. 22-4904(b).

Pursuant to K.S.A. 22-4904(a)(1), and as the prison staff was required to explain to her before she was released, Simmons was required upon her release to register with the county sheriff within

10 days of her coming into any county in which she intended to reside for more than 10 days. Thereafter, the sheriff was required to:

"(A) Explain the duty to register and the procedure for registration;

"(B) obtain the information required for registration as provided in K.S.A. 22-4907 and amendments thereto;

"(C) inform the offender that the offender must give written notice of any change of address within 10 days of a change in residence to the law enforcement agency where last registered and the Kansas bureau of investigation;

"(D) inform the nonresident student offender that the offender must give written notice to the sheriff and the Kansas bureau of investigation of any change or termination of attendance at the school or educational institution the offender is attending, within 10 days of such change or termination;

"(E) inform the nonresident worker offender that the offender must give written notice to the sheriff and the Kansas bureau of investigation of any termination of employment at the offender's place of employment, within 10 days of such termination;

"(F) inform the offender that if the offender changes residence to another state, the offender must inform the law enforcement agency where last registered and the Kansas bureau of investigation of such change in residence and must register in the new state within 10 days of such change in residence;

"(G) inform the offender that the offender must also register in any state or county where the offender is employed, carries on a vocation or is a student;

"(H) inform the offender that if the offender expects to or subsequently becomes enrolled in any institution of higher education in the state of Kansas on a full-time or part-time basis or have any full-time or part-time employment at an institution of higher education in the state of Kansas, with or without compensation, for more than 14 days, or for an aggregate period exceeding 30 days in one calendar year, the offender must provide written notice to the Kansas bureau of investigation within 10 days upon commencement of enrollment or employment;

"(I) inform the offender that if there is any change or termination in attendance or employment at an institution of higher education, the offender must provide written notice to the Kansas bureau of investigation within 10 days of the change or termination;

"(J) inform the offender of the requirement of an annual driver's license renewal pursuant to K.S.A. 8-247, and amendments thereto, and an annual identification card renewal pursuant to K.S.A. 8-1325a, and amendments thereto; and

"(K) require the offender to read and sign the registration form which shall include a statement that the requirements provided in this subsection have been explained to the offender." K.S.A. 22-4904(a)(5).

In the current version of KORA, the corresponding duties and responsibilities of the registering law enforcement agency are set forth in K.S.A. 2013 Supp. 22-4904(d).

Like prison staff and registering law enforcement agencies, the statute has a provision requiring the district court to notify all offenders subject to registration of the duty to register and the procedure for doing so. See K.S.A. 2013 Supp. 22-4904(a). Notification must occur at the time of conviction unless of course, like here, there was no duty to register when the offender was convicted. If the offender is released instead of remanded to custody, the district court is required to draft a written notice of duty to register. K.S.A. 2013 Supp. 22-4904(a)(1)(B). Significantly, there is no provision in this statute or the offender registration act as a whole that refers to, let alone authorizes, the court to order offender registration as a criminal sentence as punishment for an offender's conviction. This affirmative obligation imposed by statute on the court to inform an offender of the duty to register at the time of conviction is not an indication that the legislature intended offender registration as part of a criminal sentence. The Kansas law relating to sentencing is codified in the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2013 Supp. 21-6801 *et seq.*, and the offender registration statutory scheme is wholly separate and distinct from the KSGA.

The KORA statutory scheme outlined above establishes a statutory procedure that adequately informs and explains a newly imposed registration requirement to an offender who had no requirement to register at the time he or she was convicted and sentenced. And considering this statutory scheme in its entirety, the provisions therein reflect the legislature's clear intent that the registration requirement be imposed automatically by operation of law as a nonpunitive collateral consequence of judgment that is distinct from, and not part of, a criminal sentence.

Our Supreme Court has defined what constitutes a sentence:

"Ordinarily, in a legal sense, 'sentence' is synonymous with 'judgment' and denotes the action of a court of criminal jurisdiction formally declaring to the defendant the legal consequences of the guilt to which he has confessed or of which he has been convicted. *Roberts v. State*, 197 Kan. 687, Syl. ¶ 1, 421 P.2d 48 (1966). In criminal cases, the judgment must be rendered and sentence imposed in open court. The judgment in a criminal case, whether it imposes confinement, imposes a fine, grants probation, suspends the imposition of sentence,

or imposes any combination of those alternatives, is effective upon its pronouncement from the bench." *State v. Royse*, 252 Kan. 394, 397, 845 P.2d 44 (1993).

Although the registration requirement is a legal consequence of a conviction for designated crimes, both the United States Supreme Court and the Kansas Supreme Court have held that the duty to register is a civil penalty that is remedial in nature and intended to protect public safety, not to impose punishment. *Smith v. Doe*, 538 U.S. 84, 105-06, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003); *State v. Myers*, 260 Kan. 669, 671, 681, 695-96, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997). And the Kansas offender registration statutory scheme itself specifically makes clear that the requirement to register need not be imposed by court order at all, let alone imposed by the court in open proceedings. As such, the registration requirements simply are not part of an offender's sentence.

Moreover, broad principles of criminal law weigh against a finding that registration requirements are part of an offender's sentence. A criminal defendant has both a statutory right and a constitutional right to be present with counsel at all critical stages of the prosecution of the case against him or her. See *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977); K.S.A. 22-3405(1); *State v. Engelhardt*, 280 Kan. 113, 122, 119 P.3d 1148 (2005). Sentencing is a critical stage of a prosecution. *Mempa v. Rhay*, 389 U.S. 128, 134, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967); *State v. Bristor*, 236 Kan. 313, 317-18, 691 P.2d 1 (1984) (citing *Mempa* with favor for the proposition that sentencing is a critical stage of a criminal proceeding to which the right to counsel applies). A district court sentences a defendant when it orally pronounces punishment and other terms and conditions associated with the disposition of the crime of conviction from the bench. *State v. McDaniel*, 292 Kan. 443, 445, 254 P.3d 534 (2011). As a general rule, a sentence is complete when the district court concludes the sentencing hearing. After the hearing, the district court no longer has jurisdiction to change a sentence. See *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014) (Because restitution constitutes a part of a defendant's sentence, its amount can only

be set by a sentencing judge with the defendant present in open court, and until any applicable restitution amount is decided, a defendant's sentencing is not complete.) (abrogating *State v. Cooper*, 267 Kan. 15, Syl. ¶ 2, 977 P.2d 960 [1999]). Those fundamental legal principles dictate the outcome here. If the legislature had intended the registration requirements to be part of an offender's sentencing, it would have provided a statutory procedure through which an offender could appear in open court for imposition of sentence or modification of sentence each time KORA was amended so as to affect that offender's registration requirements. There is no such procedure in KORA.

We readily acknowledge that our decision today directly conflicts with an unpublished decision reached by another panel of our court. *State v. Dandridge*, No. 109,066, 2014 WL 702408, at *3 (Kan. App. 2014) (unpublished opinion); see *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010) (panels of Kansas Court of Appeals not bound by prior rulings of another panel). "While we must carefully consider each precedent cited to us, we also must uphold our duty to correctly determine the law in each case that comes before us. In doing so, we sometimes find that we must respectfully disagree with the opinion of another panel." *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012).

With limited analysis, the panel in *Dandridge* cited to several Kansas Supreme Court cases to support its finding that offender registration is part of a criminal sentence. 2014 WL 702408, at *3. Although we agree that our Supreme Court has issued various opinions over the last few years that reference offender registration as part of a sentence, we do not construe those references to mean that the Supreme Court has considered and decided the issue on its merits. For example, the offender registration issue presented in *State v. Mishmash*, 295 Kan. 1140, 290 P.3d 243 (2012), was a legal issue completely unrelated to sentencing. The offender registration statute in effect when Mishmash was convicted defined an offender as "any person who has been convicted of: (A) [u]nlawful manufacture or attempting such of any controlled substance or controlled substance analog . . . *unless the court makes a finding on the record that the manufacturing or attempting to man-*

*ufacture such controlled substance was for such person's personal use."* (Emphasis added.) K.S.A. 2009 Supp. 22-4902(a)(11)(A). After the defendant was convicted, he requested the sentencing court make such a finding on the record. The State objected, arguing he traded some of the drugs for nonmonetary items. During the sentencing hearing, the parties presented evidence to support their respective positions. The court ultimately concluded on the record that Mishmash was not manufacturing solely for personal use and registration as a drug offender would be required.

Unlike the issue presented here, the issue in *Mishmash* on appeal was whether the phrase "personal use" as used in K.S.A. 2009 Supp. 22-4902(a)(11)(A) implies that the manufacturer of a drug must use the drug solely or exclusively in order for the manufacturer to fall outside the classification of an offender as that word is defined in the statute. 295 Kan. at 1142-45. The Supreme Court held the district court erred in ordering offender registration and "vacat[ed] that portion of the sentence requiring Mishmash to register as a drug offender." 295 Kan. at 1145. Notably, this is the only reference to sentencing that the court makes related to registration requirements; the court was not presented with nor did it address whether the registration requirements should be considered part of a criminal sentence.

In comparing the underlying convictions in *Mishmash* to the one here, the sentencing court's decision to consider testimony about Mishmash's intended purpose for the drugs he manufactured was necessary under the KORA framework. Like here, there was no question in *Mishmash* that the obligation to register was automatically imposed upon an offender by operation of law and not by court order. But the question in *Mishmash* was whether the defendant was an "offender" as defined by statute. If the court determined he was an offender as defined by the statute (did not manufacture for personal use), he thereafter would be a person subject to the duty to register, which arises by operation of law and not by order of the court through sentencing. If the court determined that he was not an offender as defined by statute (manufactured for personal use), he would not be a person subject to the duty to register. The fact that the sentencing court decided to hear

this testimony in the context of a sentencing hearing has no bearing on the issue presented or the Supreme Court's conclusion and certainly does not mean that the registration requirement was part of Mishmash's sentence.

Like *Mishmash*, the court's reference in *State v. Denmark-Wagner*, 292 Kan. 870, 884, 258 P.3d 960 (2011), to the registration requirement as part of the defendant's sentence is not a legal conclusion creating binding precedent but, again, appears to have been phrased that way for purposes of simplicity and brevity. Denmark-Wagner was convicted of one count of felony first-degree murder pursuant to the terms of a plea agreement. The court's journal entry of judgment noted that Denmark-Wagner would be required to register as a violent offender for his lifetime based on the felony first-degree murder conviction and a finding on the record that the crime of conviction was a felony committed with a deadly weapon. On appeal, the Kansas Supreme Court determined that Denmark-Wagner had just one qualifying conviction under the offender registration statute and therefore was only required to register as an offender for a period of 10 years. It was only those persons with two or more qualifying convictions under the offender registration statute that were required to register as an offender for life. K.S.A. 22-4906(a). The court concluded that "[t]he lifetime offender registration requirement of [Denmark-Wagner's] sentence does not conform to the statute and is illegal. It must be vacated." 292 Kan. at 884. Although there can be no dispute that the court used the word "sentence" in its decision on the merits of the issue presented—the number of qualifying convictions—use of the word, in and of itself, cannot be construed as a legal holding that the registration requirement is part of the defendant's sentence.

In *State v. Jackson*, 291 Kan. 34, 238 P.3d 246 (2010), the defendant was convicted of three counts of aggravated battery pursuant to the terms of a plea agreement. After sentencing, the district court ordered the parties to submit written briefs on the legal issue of whether Jackson's juvenile adjudications would count as prior qualifying convictions under the offender registration statute. The court's journal entry of sentencing provided that Jackson was subject to lifetime registration as a violent offender under K.S.A.

22-4902(a)(7) based on two qualifying convictions for crimes committed with a deadly weapon. On appeal, Jackson argued the sentencing court did not have jurisdiction to impose the registration requirement in the journal entry because the requirement was not pronounced from the bench at sentencing. Our Supreme Court was not persuaded by this argument:

"We find that the statutorily required imposition of lifetime registration is an incident of sentencing, akin to restitution. K.S.A. 22-4906 speaks of persons who are 'required to register' and of a 'registration requirement.' Because registration is a mandatory, not a discretionary, act, the order of registration is the same kind of standard order of probation cited by our Court of Appeals in [*State v.*] *Baldwin*[, 37 Kan. App. 2d 140, 144, 150 P.3d 325 (2007)]. Because the defendant has constructive notice of the registration requirement, it is implicit in every sentence that falls within the scope of K.S.A. 22-4906. The journal entry did not modify the sentence but simply carried out a statutory imperative. The sentencing court had jurisdiction to include the registration requirement in the journal entry without making it part of the sentence imposed from the bench." 291 Kan. at 37.

Like *Mishmash* and *Denmark-Wagner, Jackson* is factually and legally distinguishable from the case presented here. The legal question in *Jackson* was whether juvenile adjudications constitute prior qualifying convictions under KORA. Unlike *Mishmash* and *Denmark-Wagner*, however, at no point in the opinion did the Supreme Court in *Jackson* refer to the registration requirement as part of the defendant's sentence. In fact, the excerpt from the opinion set forth above is much more consistent with a finding that the registration requirement is *not* a part of the defendant's sentence. See *Jackson*, 291 Kan. at 37. To that end, the court appeared to construe the KORA obligations as we have here: (1) a statutorily mandated outcome over which a sentencing court has no discretion (2) that arises automatically by operation of law (3) upon the qualifying conviction (4) of a person who meets the definition of an offender as defined by the statute. Construing the KORA obligations this way necessarily means that the statutory duty of an offender to register is a collateral consequence of judgment that is separate and distinct from a criminal sentence. This is consistent with the underlying policy of KORA as announced in *Myers*, 260 Kan. at 671, 681, 695-96 (registration provisions are remedial and intended to protect public safety, not as punishment) and the stat-

utory and constitutional rights of a criminal defendant to be present with counsel at all critical stages of the prosecution, including sentencing. See *Gardner*, 430 U.S. at 358; *Engelhardt*, 280 Kan. at 122; see also *Hall*, 298 Kan. at 986 (Because restitution constitutes a part of a defendant's sentence, its amount can only be set by a sentencing judge with the defendant present in open court, and until any applicable restitution amount is decided, a defendant's sentencing is not complete.).

After careful review of the relevant provisions of the applicable statutes, the unambiguous language therein readily establishes that the legislature intended the KORA registration requirements to be imposed automatically by operation of law without court involvement and to represent nonpunitive collateral consequences of judgment that are distinct from, and not a part of, a criminal sentence. Because the registration requirement is not part of her sentence, we necessarily conclude there is no merit to Simmons' claim that her sentence was illegally modified.

### Ex post facto

Simmons argues that applying the 2007 KORA legislation to persons who already had been convicted of drug crimes amounts to unconstitutional punishment violating the Ex Post Facto Clause of the United States Constitution. U.S. Const. art. I, § 10. A statute violates ex post facto protections if it retroactively either criminalizes conduct that had not been proscribed or increases the punishment for conduct already treated as criminal. *Myers*, 260 Kan. 669, Syl. ¶ 5. In support of her particular ex post facto claim, Simmons contends imposing the registration requirements of KORA on her increases the punishment for her original 2005 drug convictions. Resolution of her claim requires us to interpret constitutional and statutory provisions on undisputed facts, which in turn presents a question of law over which appellate courts have unlimited review. *State v. Johnson*, 297 Kan. 210, 215, 301 P.3d 287 (2013).

Our Supreme Court's decision in *Myers* essentially controls the ex post facto issue presented by Simmons here. The court in *Myers* engaged in a lengthy analysis of state and federal offender registration laws and of the legislative purpose behind the Kansas Sex

Offender Registration Act (KSORA), which is the sex offender component of the offender act at issue here. The court concluded that the duty to register served a sound public safety interest, was enacted to further that public interest, and did not impose obligations so onerous as to be punitive in their effect. 260 Kan. at 681, 695-96. The court ultimately held that the requirements were not a form of punishment triggering ex post facto protections. 260 Kan. at 696.

As Simmons asserts, the *Myers* court considered only the impact of the registration obligations themselves and not the punishment imposed under KSORA for failing to register. But the United States Supreme Court expressly has rejected the notion that punishment triggered by the failure to register is a factor to be considered in the ex post facto determination. *Smith*, 538 U.S. at 102. Specifically, the Court noted, "[a] sex offender who fails to comply with the [law's requirements] may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense." 538 U.S. at 101-02. Thus, a separate prosecution for violation of the KORA registration provisions is not a second prosecution for the underlying offense but instead is punishment imposed as a result of the subsequent prosecution. As such, any punishment imposed under KORA for failing to register is irrelevant to the ex post facto analysis.

Although Simmons acknowledges the holdings in *Smith* and *Myers*, she suggests that both the United States Supreme Court and the Kansas Supreme Court might now reach a different result in analyzing the current version of KORA. Specifically, Simmons points to the expanded scope of the offenders who are required to register, the heightened reporting obligations, and the more aggressive public notification provisions implemented since the court in *Myers* considered the constitutionality of KSORA in 1996. Although the changes Simmons points out between KSORA as it was upheld in *Myers* and the KORA version applied to her are significant, ultimately they are matters of degree rather than differences of kind. Thus, absent some indication the Kansas Supreme Court intends to retreat from its decision in *Myers*, it remains controlling authority. Likewise, many of the registration features challenged

by Simmons were included in the Alaska sex offender registration act upheld by the United States Supreme Court in *Smith*. See 538 U.S. at 90-91, 105-06.

*DNA database fee*

On July 25, 2012, Simmons was sentenced for failing to register and placed on probation for 24 months, with an underlying sentence of 27 months' imprisonment, as well as 24 months' post-release supervision. At sentencing, the court noted that Simmons would be "required to submit a DNA sample, and there's a $200.00 DNA database fee the court is required to charge for that." Simmons argues the district court erred in requiring her to submit the DNA sample and pay the fee because her DNA already is on file with the Kansas Bureau of Investigation (KBI) as a result of her prior incarceration.

Simmons' argument requires us to interpret the statutes authorizing the collection of DNA samples and DNA database fees. Interpretation of a statute is a question of law over which we exercise unlimited review. *Johnson*, 297 Kan. at 215.

K.S.A. 2013 Supp. 21-2511 is the statute that authorizes the collection of DNA samples. Although initially limited in scope to the collection of blood and saliva from certain offenders such as sex offenders, the legislature amended K.S.A. 21-2511(a) in 2002 to require any person convicted of a felony "to submit specimens of blood and saliva to the Kansas bureau of investigation in accordance with the provisions of this act." L. 2002, ch. 128, sec. 1. If the person is placed directly on probation, the court is required to order the sample collected within 10 days after sentencing. K.S.A. 2013 Supp. 21-2511(c)(1).

The legislature added subsection (e) to K.S.A. 21-2511 in 2006. L. 2006, ch. 171, sec. 2. This subsection extends the time period for collection from what used to be only the end of the legal process to the beginning of the legal process as well. Thus, after July 1, 2008, any adult arrested or charged with the commission or attempted commission of any felony is required to submit a specimen of blood or an oral or other biological sample "at the same time such person is fingerprinted pursuant to the booking procedure."

K.S.A. 2013 Supp. 21-2511(e)(2). Before taking this DNA sample, however,

"the arresting, charging or custodial law enforcement agency shall search the Kansas criminal history files through the Kansas criminal justice information system to determine if such person's sample is currently on file with the Kansas bureau of investigation. In the event that it cannot reasonably be established that a DNA sample for such person is on file at the Kansas bureau of investigation, the arresting, charging or custodial law enforcement agency shall cause a sample to be collected. If such person's sample is on file with the Kansas bureau of investigation, the law enforcement agency is not required to take the sample." K.S.A. 2013 Supp. 21-2511(e)(3).

K.S.A. 2013 Supp. 75-724 is the statute that authorizes the collection of DNA database fees. This statute provides, in relevant part:

"(a) Any person convicted or adjudicated of an offense that, pursuant to K.S.A. 21-2511, and amendments thereto, requires submission of a DNA sample upon arrest, charging or placement in custody, shall pay a separate court cost of $200 as a Kansas bureau of investigation DNA database fee upon conviction or adjudication.

"(b) The court shall order such fees regardless of whether the person's DNA sample was already on file with the Kansas bureau of investigation at the time such person was arrested, charged or placed in custody, unless the person can prove to the court that the person: (1) Has paid such fees in connection with a prior conviction or adjudication; and (2) did not submit specimens of blood or an oral or other biological sample authorized by the Kansas bureau of investigation to the Kansas bureau of investigation for the current offense of conviction or adjudication."

Having set forth the applicable law, we begin our analysis by noting that the record is unclear about whether Simmons submitted a DNA sample and/or whether the agency searched the Kansas criminal history files to determine whether her DNA already was on file at the time Simmons went through the booking procedure on her charge of failing to register. See K.S.A. 2013 Supp. 21-2511(e)(2) and (e)(3). Having noted this ambiguity in the record, however, resolving it is unnecessary to our decision on the issue presented. This is because under K.S.A. 2013 Supp. 75-724(b), the court was required to order Simmons to pay the DNA database fee upon conviction—regardless of whether the person's DNA sample was already on file with the KBI at the time such person

was arrested, charged, or placed in custody—unless Simmons provided evidence to establish to the court that (1) she already paid the fee in connection with a prior conviction *and* (2) she was not ordered to submit a DNA sample for the current offense. Therefore, even if Simmons had submitted a DNA sample upon her release from prison in 2008 and that sample had been entered into the database, the court would still be required to order her to pay the fee unless she could prove she paid the fee for the prison test. See K.S.A. 2013 Supp. 75-724(b)(1). Because Simmons failed to sustain her burden of proof, her claim fails.

Affirmed.