NOT DESIGNATED FOR PUBLICATION

No. 114,763

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DARRICK S. KLIMA,
*Appellee*.


MEMORANDUM OPINION

Appeal from Republic District Court; KIM W. CUDNEY, judge. Opinion filed December 9, 2016. Reversed and remanded.

*Marlea J. James*, county attorney, and *Derek Schmidt*, attorney general, for appellant.

*Christopher M. Joseph*, of Joseph, Hollander & Craft LLC, of Topeka, for appellee.

Before MALONE, C.J., GREEN, and LEBEN, JJ.

*Per Curiam*:  The State of Kansas appeals the district court's decision granting Darrick Klima's motion to dismiss charges stemming from violations of the Kansas Offender Registration Act (KORA). Specifically, the State argues that the 2011 amendments to KORA, which extended Klima's required registration term from 10 years to lifetime, do not violate the Ex Post Facto Clause of the United States Constitution and, therefore, apply retroactively. Based on a controlling decision from the Kansas Supreme Court, we agree with the State's argument and remand for further proceedings.

1

FACTS

On May 16, 2001, Klima was convicted of aggravated indecent solicitation of a child and promoting obscenity to a minor. On June 7, 2001, the district court sentenced Klima to a controlling term of 19 months' imprisonment but granted probation with community corrections for 24 months. Because his crimes were sexually motivated, the district court ordered Klima to register as a sex offender for 10 years under the version of KORA in effect at that time.

Prior to the expiration of Klima's registration period, KORA was amended to require lifetime registration of anyone convicted of aggravated indecent solicitation of a child. See K.S.A. 2011 Supp. 22-4906(d)(2). Following the 2011 amendments, Klima continued to comply with KORA's requirements that he report to the Republic County Sheriff's Office and complete KORA registration forms four times per year. He failed, however, to disclose that he operated a Facebook page for his business, Dirt Racing Source, between January 14, 2014, and April 16, 2015. Klima also neglected to inform the sheriff's office of an email address he used that was associated with the Facebook page. The sheriff's office also discovered that Klima had used a Facebook account under the name of Tanner Roop to send a private message on January 30, 2015.

On May 20, 2015, the State charged Klima with nine counts of violating KORA. The first six counts related to his failure to disclose his Dirt Racing Source Facebook page. Counts 7 and 8 stemmed from his undisclosed email address, and count 9 was a result of the Facebook message sent under the name of Tanner Roop.

On August 17, 2015, Klima filed a motion to dismiss in the district court and argued that the retroactive application of the 2011 amendments to KORA violated the Ex Post Facto Clause of the United States Constitution. Thus, he claimed the lifetime registration term did not apply to him, and he could not be charged for violations that

2

occurred after his 10-year registration period would have terminated in 2011. In its response to Klima's motion to dismiss, the State argued that KORA as amended in 2011 did not violate the Ex Post Facto Clause because it was neither intended by the legislature to be punitive nor was it actually punitive in effect.

At the motion hearing conducted on October 6, 2015, the district court agreed with Klima and found that retroactive application of the 2011 amendments to KORA violates the Ex Post Facto Clause. The district court reasoned that although the legislature did not intend for the KORA amendments to be punitive, the amendments were punitive in effect because they allowed Klima to be convicted of violating KORA registration requirements after the period of time that his original registration requirements would have expired. The district court dismissed all the charges against Klima. The State timely appealed.

ANALYSIS

The State argues on appeal that the district court erred in granting Klima's motion to dismiss because the 2011 amendments to KORA do not violate the Ex Post Facto Clause of the United States Constitution. Specifically, the State argues that the 2011 amendments to KORA are not punitive in effect and because the registration requirements are not punitive, there can be no Ex Post Facto violation. The State argues that the Kansas Supreme Court's decision in *State v. Petersen-Beard*, 304 Kan. 192, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016), which was filed after the district court's dismissal of the charges against Klima, controls the outcome of this appeal.

Klima argues that the Kansas Supreme Court's decision in *Petersen-Beard* does not resolve the Ex Post Facto issue in this case because that decision addressed whether KORA's lifetime registration requirements constitute cruel and unusual punishment. Klima also argues that because registration was imposed as part of his sentence, it is "axiomatic" that the legislature intended registration to be punitive. Finally, Klima argues

3

that the 2011 amendments to KORA were punitive in effect and violate the Ex Post Facto Clause for the reasons stated by the district court.

When a statute is challenged on constitutional grounds, this court exercises an unlimited standard of review. *State v. Cook*, 286 Kan. 766, 768, 187 P.3d 1283 (2008). We presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. *Petersen-Beard*, 304 Kan. at 194. Moreover, this court must interpret a statute in a way that upholds its constitutionality if there is any reasonable construction that would maintain the legislature's apparent intent. 304 Kan. at 194.

Whether a statutory provision contravenes the Ex Post Facto Clause is analyzed under the "intent-effect" test where the court first determines whether the legislature intended the statute to establish a civil proceeding. 304 Kan. at 194. If the legislature intended to impose punishment, the inquiry ends and the provision is deemed an ex post facto law. 304 Kan. at 194. But if the legislature intended to enact a civil and nonpunitive regulatory scheme, the court must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. 304 Kan. at 194. "Because we 'ordinarily defer to the legislature's stated intent,' [citation omitted] 'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." 304 Kan. at 194 (quoting *Smith v. Doe*, 538 U.S. 84, 92, 123 S. Ct. 1140, 155 L. Ed. 2d 164 [2003]).

Our analysis in this case is controlled by the Kansas Supreme Court's recent decision in *Petersen-Beard*, which addressed whether KORA as amended in 2011 constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. Noting that the first step of an Eighth Amendment inquiry is determining whether the practice at issue even constitutes punishment, the court explained that there is no distinction between an analysis of whether KORA's lifetime registration requirement is punitive for ex post facto purposes or for purposes of the

4

Eighth Amendment. 304 Kan. at 196. Therefore, the court undertook a traditional ex post facto analysis because if lifetime sex offender registration was punitive for ex post facto purposes, it was also necessarily punitive under the Eighth Amendment. 304 Kan. at 196. Because our Supreme Court was clear that its ruling in *Petersen-Beard* was equally applicable to ex post facto challenges to KORA, it controls our analysis here.

Our Supreme Court in *Petersen-Beard* ultimately ruled that KORA's lifetime registration requirement was not punitive and noted that it did not run afoul of the Ex Post Facto Clause. 304 Kan. at 197, 208. In doing so, the court overruled its prior decisions holding that the 2011 amendments to KORA violated the Ex Post Facto Clause in *State v. Redmond*, 304 Kan. 283, 371 P.3d 900 (2016); *State v. Buser*, 304 Kan. 181, 371 P.3d 886 (2016); and *Doe v. Thompson*, 304 Kan. 291, 373 P.3d 750 (2016). The *Petersen-Beard* court adopted the reasoning behind the dissent in *Thompson* "in toto" and "quot[ed] liberally" from it in reaching its ultimate conclusion. 304 Kan. at 197.

*Legislative intent*

Although the Kansas Supreme Court overruled *Thompson*, it did not disturb *Thompson*'s holding that in enacting the 2011 amendments to KORA, the legislature intended to "preserve KORA's status as a civil regulatory scheme." *Petersen-Beard*, 304 Kan. at 195; *Thompson*, 304 Kan. at 332. The nature of KORA as a nonpunitive, civil regulatory scheme has long been recognized by our courts. See, *e.g.*, *State v. Myers*, 260 Kan. 669, 681, 923 P.2d 1024 (1996) (holding that the legislative history of KORA shows a nonpunitive purpose of public safety); *State v. Simmons*, 50 Kan. App. 2d 448, 458, 329 P.3d 523 (2014) (holding that duty to register is a civil penalty that is remedial in nature and intended to protect public safety, not to impose punishment). Thus, because the legislature did not intend that KORA operate punitively, we now turn to the second step of the analysis: whether in this case the statute "has a punitive effect sufficient to negate [its] nonpunitive purpose." *Myers*, 260 Kan. at 681.

5

*Actual punitive effect*

In examining whether the practical effect of a statute is punitive for purposes of ex post facto challenges to sex offender registration statutes such as KORA, our courts employ the seven-factor test articulated by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963). The factors the court considers are:

> "[T]he degree to which the regulatory scheme imposes a sanction that: (1) has historically been regarded as punishment; (2) constitutes an affirmative disability or restraint; (3) promotes the traditional aims of punishment; (4) is rationally connected to a nonpunitive purpose; (5) is excessive in relation to the identified nonpunitive purposes; (6) contains a sanction requiring a finding of scienter; and (7) applies the sanction to behavior that is already a crime." *Petersen-Beard*, 304 Kan. at 198 (citing *Mendoza-Martinez*, 372 U.S. at 168-69).

As explained by our Supreme Court in *Petersen-Beard*, the first five factors are the most relevant, while the remaining two are to be given "'little weight.'" 304 Kan. at 198-99 (quoting *Smith*, 538 U.S. at 105). Examining the five factors, the court first found that federal caselaw overwhelmingly provides that public registration and reporting requirements for sex offenders are not "analogous to historical forms of punishment," and the same reasoning behind those cases applies with equal force to KORA. 304 Kan. at 199. Next, addressing the affirmative disability factor, the court held that although actual adverse consequences often accompany offender registration, federal caselaw has upheld these prohibitions as nonpunitive. 304 Kan. at 205-06.

In regards to whether the registration requirement promotes traditional aims of punishment, the court first acknowledged that KORA may have a deterrent effect, which is a traditional goal of punishment, but "to hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' . . . would severely undermine the Government's ability to engage in effective regulation." 304 Kan. at 206. Instead, the

6

court found that KORA's registration requirement was a response to the high rates of recidivism in sex offenders and thus was consistent with its regulatory purpose. 304 Kan. at 206.

The court next considered the most significant factor: whether KORA has a rational connection to a nonpunitive purpose. 304 Kan. at 207. The court determined that KORA's registration requirement is rationally related to the nonpunitive purpose of public safety, which "finds overwhelming approval in the federal caselaw." 304 Kan. at 208. Finally, the court concluded that neither the 2011 amendment's obligation to report additional information nor the increased penalty for noncompliance are excessive considering the public safety purposes of KORA. 304 Kan. at 208. Therefore, although KORA as amended imposes burdens on sex offenders, our Supreme Court ultimately ruled that it is nonpunitive and does not violate the Ex Post Facto Clause of the United States Constitution. 304 Kan. at 208.

Klima attempts to argue that because his duty to register as a sex offender under KORA was imposed as part of his sentence, "ex post facto analysis requires that it be deemed punishment . . . regardless of whether the [c]ourt would separately find it to be punitive in effect." Klima claims that because it is "axiomatic" that the legislature intends criminal sentences to be punitive and because the Ex Post Facto Clause prohibits increasing a sentence once it is imposed, KORA as amended does not apply to him.

We find this argument unpersuasive. The duty to register as a sex offender under KORA is not part of a criminal sentence; instead, the registration requirement is "imposed automatically by operation of law as a nonpunitive collateral consequence of judgment that is distinct from, and not part of, a criminal sentence." *Simmons*, 50 Kan. App. 2d at 457. Granted, the duty to register under KORA is imposed on the defendant at the sentencing hearing, but this fact does not mean that the registration requirement is part of the defendant's criminal sentence. In *State v. Jackson*, 291 Kan. 34, 37, 238 P.3d

7

246 (2010), our Supreme Court likened the statutorily imposed registration requirement to a "standard order of probation" that is imposed on the defendant by law and can be included in the sentencing journal entry even when the judge does not order the defendant to register as part of the sentence imposed from the bench. If the registration requirement was truly a part of the defendant's criminal sentence, then the requirement would need to be imposed from the bench to have any effect. See *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012) (finding that a journal entry that imposes a sentence at variance with the sentence pronounced from the bench is erroneous and must be corrected to reflect the actual sentence imposed).

In summation, for the reasons expounded by the Kansas Supreme Court in *Petersen-Beard*, we hold that the 2011 amendments to KORA do not violate the Ex Post Facto Clause of the United States Constitution. Thus, KORA as amended in 2011 applies retroactively to Klima and the district court erred in granting his motion to dismiss.

Reversed and remanded.