NOT DESIGNATED FOR PUBLICATION

No. 117,081

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AMY STOLL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed September 7, 2018. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., STANDRIDGE, J., and RYAN W. ROSAUER, District Judge, assigned.

LEBEN, J.: Amy Stoll appeals her conviction for failure to register as a drug offender under the Kansas Offender Registration Act. Most of her arguments relate to whether she had to have some bad intent, such as intentionally failing to register, rather than just messing up and not getting it done within the time frame set by the Legislature.

But the Legislature indicated through the words it chose that this would be a strict-liability crime, meaning that the failure to comply with the Registration Act is a crime no matter what the defendant may have intended. And although Stoll argues that the

Registration Act is unconstitutional if no bad intent is required, the Legislature has general authority to establish strict-liability offenses. Even if there may be some constitutional limit on the ability to do so when a person subject to the law might have no idea they were committing a crime, that doesn't help Stoll. She knew she had to register, knew the general provisions of the Registration Act, and had complied with it for several years before she moved and failed to register her new address within three days, as the statute requires. We find no error in the district court proceedings and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Amy Stoll's registration requirement is based on her 2008 conviction for conspiracy to unlawfully manufacture a controlled substance. The district judge who sentenced her for that offense apparently told her that it triggered registration duties under the Kansas Offender Registration Act. That turned out to have been incorrect—the specific drug offense Stoll committed wasn't added to the list of drug crimes requiring registration until 2011. But Stoll dutifully complied with the requirements for about seven years.

That meant that she registered with her local sheriff four times a year—in March, June, September, and December. She was also required to register within three business days of moving or changing jobs.

The provision requiring registration when she moved came into focus in 2015. Stoll had reported that she lived on Fifth Avenue in Hutchinson in June and September. But in October, a sheriff's deputy got a tip from the Kansas Bureau of Investigation that the house on Fifth Avenue she had listed as her residence had a "For Rent" sign posted on it. The deputy found the house vacant and confirmed with a property manager that no one had lived there since September 30. Stoll didn't try to register her new address until

2

November 3. So the State charged Stoll with failing to register within three days of a move.

Stoll filed a pretrial motion arguing that the State should have to prove that she had a guilty state of mind (what lawyers who like Latin call a mens rea) when she failed to register. She also argued that finding her guilty without some guilty state of mind would violate her due process rights. After the district court denied that motion, Stoll waived her jury-trial right and agreed to a bench trial.

At that trial, Stoll stipulated that she had been convicted of a crime that required her to register; that she knew of the registration requirement; and that she had reported in June and September 2015 that she lived on Fifth Avenue. She testified that she moved out of that house on September 30 and didn't register again within three days of moving.

Based on that evidence, the district court found Stoll guilty of failing to register. At sentencing, the court granted a departure sentence, giving Stoll 24 months of probation rather than the presumptive prison sentence. If Stoll doesn't successfully complete her probation, she would have to serve the underlying 28-month prison sentence.

After sentencing, Stoll appealed to our court.

ANALYSIS

Stoll's primary arguments relate to whether a guilty mental state is required to convict someone for failing to register. First, she argues as a matter of statutory interpretation that we should interpret the statute as requiring some guilty mental state. Second, if we don't accept that argument, she contends that the statute is unconstitutional if no guilty mental state is required.

3

I. *The District Court Correctly Determined That No Guilty Mental State Is Required to Violate the Kansas Offender Registration Act.*

What's a crime is determined by statutes enacted by the Kansas Legislature—we have no common-law crimes. See K.S.A. 2017 Supp. 21-5103(a). And the Legislature has said that "[e]xcept as otherwise provided, a culpable mental state is an essential element of every crime." K.S.A. 2017 Supp. 21-5202(a). So the question we must determine is whether the Legislature has provided that a person can violate the Kansas Offender Registration Act without having some culpable mental state, like having intentionally failed to do so.

In most cases, the separate Kansas statute making something a crime also tells us which of three culpability levels (an act or omission can be done intentionally, knowingly, or recklessly) applies. See K.S.A. 2017 Supp. 21-5202. For example, the statute making battery a crime tells us that it can be done either knowingly or recklessly if bodily harm is caused to another person, but that it must be knowingly done if there's no bodily harm but there is physical contact done in a rude, angry, or insulting way. See K.S.A. 2017 Supp. 21-5413(a). Blackmail, by contrast, must be intentionally done. K.S.A. 2017 Supp. 21-5428(a).

The Legislature has also provided what happens if there's no culpability level specified in the statute creating the crime: "If the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element." K.S.A. 2017 Supp. 21-5202(d). Both parties agree that although the Kansas Offender Registration Act provides that a failure to register is a crime, it doesn't say anything about mental culpability. See K.S.A. 2017 Supp. 22-4903(a). Based on that and K.S.A. 2017 Supp. 21-5202(d), Stoll argues that the Legislature didn't "plainly dispense[]" with the mental-element requirement, so one is still required.

But two other provisions rebut Stoll's argument. We've already mentioned the first one—the first four words of K.S.A. 2017 Supp. 21-5202(a): "*Except as otherwise provided*, a culpable mental state is an essential element of every crime defined by this code." (Emphasis added.) And something "otherwise provided" is relevant here—another provision exempts violations of the Kansas Offender Registration Act from the mental-culpability requirement: "A person may be guilty of a crime without having a culpable mental state if the crime is: . . . (f) a violation of K.S.A. 22-4901 et seq. [the Kansas Offender Registration Act], and amendments thereto." K.S.A. 2017 Supp. 21-5203. So a culpable mental state is required "[e]xcept as otherwise provided," and the Legislature specifically provided that violation of the Kansas Offender Registration Act is an exception.

Stoll responds with a novel but unpersuasive argument. She focuses on the use of "may" in K.S.A. 2017 Supp. 21-5203: "A person *may* be guilty of a crime without having a culpable mental state" under the Kansas Offender Registration Act. (Emphasis added.) Noting the difference between "shall" and "may," Stoll argues that the use of "may" means the statute is *permissive*. So, she argues, the district court wasn't required to treat this as a strict-liability offense. And since the Legislature must "plainly dispense[]" with the mental-culpability requirement to get rid of it, using the permissive may didn't do the job.

Stoll's argument has a flawed premise—that the only meaning of "may" is the permissive one. To be sure, that's a common usage. When a child asks, "May I go over to my friend's house?", the child is seeking permission. And it means something far different if Mother says, "You *may* go" rather than "You *shall* go" (something she might say if you owed the friend an apology). Stoll's right that there's a difference between the permissive "may" and the mandatory "shall."

5

But "may" has more than the permissive meaning. It can also mean possibility, as in, "It may rain this afternoon" or "You may be right." That's the sense in which "may" is used in K.S.A. 2017 Supp. 21-5203: "A person may be guilty of a crime without having a culpable mental state" under the Kansas Offender Registration Act means that's possible if the person otherwise met the requirements for criminal liability.

Let's consider another of the situations in which K.S.A. 2017 Supp. 21-5203 provides that a person *may* be guilty of a crime without having a culpable mental state—traffic infractions. If you're speeding, you may be found guilty without having known you were speeding. It's a classic strict-liability offense. The State still has to prove that you were, in fact, speeding. But the State doesn't have to prove mental culpability. "May" in K.S.A. 2017 Supp. 21-5203 simply isn't used in the permissive sense. It's not equivalent to "A person has permission to be guilty of a crime without a culpable mental state." Rather, the "may" here suggests possibility—a person *can* be guilty of a crime without a culpable mental state.

When is that possible? Under the specifically listed situations, which include traffic violations, K.S.A. 2017 Supp. 21-5203(a), and the Kansas Offender Registration Act, K.S.A. 2017 Supp. 21-5203(f). For a Registration Act violation, the State must still prove that the person had to register and failed to do so, just as it must prove that a person charged with a traffic offense was the driver and exceeded the speed limit.

In sum, a culpable mental state is an essential element of all Kansas crimes "[e]xcept as otherwise provided" by statute. K.S.A. 2017 Supp. 21-5202(a). Under K.S.A. 2017 Supp. 21-5203(f), the Legislature has provided that no culpable mental state is required to prove a criminal violation of the Kansas Offender Registration Act.

II. *Stoll Lacks Standing to Argue That Making a Violation of the Kansas Offender Registration Act Criminal Is Unconstitutional.*

Stoll next claims that if there's no mental-culpability requirement, then making it a crime to fail to register would be unconstitutional. We ultimately conclude that Stoll lacks legal standing to bring this claim, but to understand that we'll first need to review the claim Stoll is making.

Stoll argues that the law has long disfavored defining something as a crime without a mental-culpability requirement. Based on that, Stoll notes, the Minnesota Court of Appeals held in *State v. Moser*, 884 N.W.2d 890, 899 (Minn. App. 2016), that strict-liability crimes have "only been accepted in two narrow areas: public welfare offenses and crimes where it is reasonable to place the burden on the defendant to discover the facts that make the conduct criminal." *Moser* mentioned laws in both areas, such as a public-welfare law prohibiting possession of an open alcohol bottle in a vehicle, see *State v. Loge*, 608 N.W.2d 152, 157 (Minn. 2000), and a federal law banning possession of unregistered hand grenades, a situation in which you could reasonably place the burden on someone keeping a hand grenade around to check for laws related to that. See *United States v. Freed*, 401 U.S. 601, 609, 91 S. Ct. 1112, 28 L. Ed. 2d 356 (1971) ("[O]ne would hardly be surprised to learn that possession of hand grenades is not an innocent act."). Stoll argues that a violation of the Kansas Offender Registration Act doesn't fit within these narrow exceptions.

We agree with Stoll that there's normally a mental-culpability requirement for crimes in the United States. Our Legislature recognized that in K.S.A. 2017 Supp. 21-5202(a) when it said that "a culpable mental state is an essential element of every [Kansas] crime" unless otherwise specifically provided. But there's also a recognized ability for Congress or a state legislature to create strict-liability crimes: "There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and

7

diligence from its definition." *Lambert v. California*, 355 U.S. 225, 228, 78 S. Ct. 240, 2 L. Ed. 2d 228 (1957); see *Steffes v. City of Lawrence*, 284 Kan. 380, 390, 160 P.3d 843 (2007) (noting that the Legislature may establish strict-liability offenses for the protection of the public).

Professor Wayne LaFave has noted that strict-liability offenses have generally been upheld against constitutional challenges. He also includes Minnesota among the "few states [that] take a somewhat narrower view of what is allowed," citing *Moser*. 1 LaFave, Substantive Crim. Law §§ 3.3(d), 5.5(b) (3d ed. 2018); see also *United States v. Ruggiero*, 791 F.3d 1281, 1287 (11th Cir. 2015) (concluding that the claimed rule that Congress could not eliminate mental-culpability requirement outside of public-welfare offenses was merely "a tool of statutory interpretation to be used when the language of the statute is unclear" rather than a constitutional limit on the legislature's power to define crimes).

As Professor LaFave notes, the United States Supreme Court has only found a strict-liability law unconstitutional one time, in the *Lambert* case. Like our situation, that case involved a registration requirement, so we should take a close look to see how closely Stoll's case matches *Lambert*.

That case involved a Los Angeles city ordinance that made it unlawful for a convicted felon to remain in Los Angeles for more than five days without registering. For the purposes of its decision, the *Lambert* Court assumed that Lambert had no actual knowledge of the registration requirement. Given that assumption, the Court held that Lambert could not be held criminally liable for violating the ordinance: "We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand." 355 U.S. at 229.

8

But Stoll is not at all in the same position as Lambert was. Lambert moved into Los Angeles, and the Court assumed she wasn't aware of the registration requirement. Stoll stipulated at trial that she had been convicted of a crime requiring registration and that she knew of the registration requirement.

That admission presents an insurmountable problem to Stoll's attempt to attack the constitutionality of this Kansas criminal statute. Stoll seeks to challenge its constitutionality broadly by saying that the State should be required in all cases to prove the defendant's mental culpability. But we see no reason to believe the statute *as applied to her* would be unconstitutional. She stipulated at trial that she knew about the registration requirement, and that would be enough to satisfy the constitutional test she endorses. So there's no possibility that this constitutional issue had any impact on her own case.

In this situation, we lack standing to consider the issue. See *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 507-08, 110 P.3d 438 (2005) (holding that if there's no constitutional problem in applying the statute to the litigant, that litigant doesn't have standing to argue that it would be unconstitutional as applied to others). And that's something that Kansas courts consider a jurisdictional issue that the court has a duty to raise on its own. See *KNEA v. State*, 305 Kan. 739, 743, 387 P.3d 795 (2017). So we do not reach the question whether omitting a mental-culpability element for this offense makes the criminal statute unconstitutional for anyone but Stoll.

III. *Stoll's Additional Arguments Do Not Show Error by the District Court.*

In addition to the issues we've discussed so far (about whether a guilty state of mind should have been required to convict her), Stoll has raised two other issues on appeal. Neither is persuasive.

Stoll claims that she shouldn't have been required to register in the first place because her 2008 conviction for conspiracy to manufacture a controlled substance didn't trigger a registration requirement at that time. She argues that the 2011 amendment to the Registration Act adding drug crimes, including hers, to the list of crimes triggering the registration requirement can't be constitutionally applied to her. But she stipulated at trial that she had been convicted of a crime that required her to register. If it was an error to say she was required to register, it was one she invited the district court to make. The invited-error rule precludes review of this issue. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014).

Stoll also argues that substantial compliance with the Registration Act should be sufficient to avoid criminal liability. She contends that since she did report her move in November, that should be considered substantial compliance with her reporting obligation, absolving her from criminal liability.

In support of that argument, she primarily cites three points made in caselaw. First, she notes that the Kansas appellate courts have described the Registration Act as remedial legislation, citing *State v. Myers*, 260 Kan. 669, Syl. ¶ 1, 923 P.3d 1024 (1996), and *State v. Simmons*, 50 Kan. App. 2d 448, Syl. ¶ 9, 329 P.3d 523 (2014), *aff'd* 307 Kan. 38, 405 P.3d 1190 (2017). Second, she notes that remedial legislation should "be liberally construed to effectuate the purpose for which it was enacted." *Smith v. Marshall*, 225 Kan. 70, Syl. ¶ 1, 587 P.2d 320 (1978). Third, she cites a case, *High v. Kansas Dept. of Revenue*, No. 103,260, 2010 WL 5490738, at *1 (Kan. App. 2010) (unpublished opinion), in which we said, "Substantial compliance—rather than strict compliance—is the rule for remedial statutes . . . ."

There are two problems with Stoll's argument.

10

First, even when the substantial-compliance rule is applied to a remedial statute, it's applied in a way that goes toward better meeting the statute's purpose. In the *High* case, we were considering a statute providing for the suspension of the driver's licenses of drunk drivers. We decided that only substantial compliance was required with a statutory provision for service of a notice on the driver by a police officer, so it was okay for the officer's assistant to mail the notice rather than the officer doing so, as the statute literally seemed to require. That helped carry out the purpose of that statute—protecting the public from drunk drivers. But we wouldn't apply the substantial-compliance rule in a way that might lessen that public protection, such as by concluding that a driver whose blood-alcohol concentration was .09 was close enough to sober that we should consider that substantial compliance. Here, the purpose of the Registration Act is the protection of the public from designated offenders that the Legislature has concluded are likely to reoffend. *State v. Fredrick*, 292 Kan. 169, 173, 251 P.3d 48 (2011). That purpose is not furthered by relaxing the registration requirements.

Second, there's no indication that the Legislature intended any of the registration requirements to be relaxed. As we've already explained, the Legislature made the failure to register a crime even with no guilty state of mind. That choice made by the Legislature isn't consistent with the relaxed-enforcement rule urged by Stoll.

Stoll also tries to support the application of a substantial-compliance rule with a constitutional-due-process argument—that since law-enforcement personnel aren't strictly required to comply with provisions that they tell convicted defendants all of their registration duties, then those defendants shouldn't be strictly held to the registration requirements. But Stoll admits that she did not raise this issue in the district court. That normally means we can't consider it on appeal. She tries to apply the exception either for the denial of a fundamental right or when the question can be determined by us on proved or admitted facts. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). We do not find those exceptions applicable here because Stoll has not alleged or pointed to

11

evidence that law-enforcement officials failed in any way to comply with their duties to inform her of the Registration Act's requirements. We therefore do not reach this due process argument.

We affirm the district court's judgment.