(228 P.3d 1103)
No. 101,201

STATE OF KANSAS, *Appellee*, v. DOUGLAS LECLAIR, *Appellant*.

Opinion filed April 15, 2010.

*Meryl Carver-Allmond*, of Kansas Appellate Defender Office, for appellant.

*Christina Trocheck*, county attorney, and *Steve Six*, attorney general, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

HILL, J.: In this appeal, we affirm the conviction of Doulas E. LeClair for failing to register under the Kansas Offender Registration Act. But we do so for different reasons than those found by the district court.

*LeClair left the county and did not establish a new residence for some time.*

Obeying the Kansas Offender Registration Act, K.S.A. 22-4901 *et seq.*, LeClair registered with the Saline County Sheriff's Department as an offender on April 4, 2007. As a component of this registration, a sheriff's deputy explained to LeClair his duties under the Act. LeClair signed and initialed a document confirming that he understood these duties. LeClair's duties included the following:

- "Within ten (10) days of entering into any county where I reside or temporarily reside for more than ten (10) days, I must register with the sheriff of the county.

  . . . .

- "If I change my address, or any other information in reference to my registration changes, I must give written notice to the sheriff's office where I last registered and to the Kansas Bureau of Investigation (KBI) within ten (10) days of the change.

  . . . .

- "If I change my residence to another state, I must inform the sheriff's office where I last registered and the KBI of my change of residence and must register in the new state within ten (10) days."

Sometime around June 1, 2007, LeClair asked his landlord, Galen Thacker, to drive him to the Salina bus station. LeClair had purchased a ticket to Las Vegas, Nevada, and planned to leave Kansas permanently. At the time of his departure, LeClair was not immediately planning to settle in Las Vegas but rather use the city as a starting point to explore other parts of the Southwest before deciding where he wanted to live. LeClair never notified the sheriff's department he was leaving Salina.

After arriving in Las Vegas, LeClair spent a couple of days in a shelter and then traveled to Provo, Utah. On June 5, 2007, LeClair mailed a letter from Provo to the sheriff's department. The letter included the following statement: "I, Douglas M. LeClair . . . a registered sex offender in Saline County, am leaving the state of Kansas; I will not be returning. When I get to where I am going, I will contact local law enforcement." The letter did not contain an address where LeClair could be reached. The Saline County Sheriff's Department received no additional notifications or registration documents from LeClair.

LeClair stayed on the move for a time. Including his trip to Provo, LeClair spent approximately 3 weeks traveling to various cities in the Southwest. During these visits, he slept outside. Then, sometime around the third week of June, LeClair returned to Las Vegas and decided to settle there. On June 29, 2007, LeClair asked the Social Security Office to send his disability check to the Salvation Army in Las Vegas. The next day, he rented Apartment 10-C at 29 North 28th Street, Las Vegas, Nevada. Ultimately, LeClair

registered as a sexual offender with the Las Vegas Metropolitan Police Department on July 9, 2007. LeClair's Nevada registration listed his new address as 29 North 28th Street, Apartment 10-C; Las Vegas, Nevada.

In October 2007, the State charged LeClair with five counts of failing to register as an offender as required by K.S.A. 22-4904(b). The State based each count on LeClair failing to notify anyone of his move after he left Salina. The first lapsed 10-day period and the following four 30-day periods each period served as the basis of a separate charge. So, Count I charged LeClair with failing to register any time from June 1, 2007, through June 11, 2007. Count II charged LeClair with failing to register from June 11, 2007, through July 11, 2007. Count III charged LeClair for failing to register from July 11, 2007, through August 11, 2007. Count IV charged LeClair with failing to register from August 11, 2007, through September 11, 2007. Finally, Count V charged LeClair with failing to register from September 11, 2007, through October 11, 2007.

The State extradited LeClair to Kansas for trial. By agreement the court tried the matter. At trial, LeClair testified that when he registered in Las Vegas, an official with the police department promised to notify Kansas authorities of his registration and new address. Indeed on March 12, 2008, the Saline County Sheriff's Department did receive an email from the Las Vegas police department that told them of LeClair's registration there on July 9, 2007. At the conclusion of the bench trial, the district court acquitted LeClair of Counts II-V. However, the district court found him guilty of Count I, which alleged that LeClair failed to register from June 1, 2007, through June 11, 2007. The court based its verdict on finding that LeClair failed to notify the Saline County Sheriff's Department within 10 days of his change of address.

In this appeal, LeClair contends the district court erred in finding him guilty of a violation of K.S.A. 22-4904(b), because he had no new residence to report to the sheriff's department. In his view, he was therefore unable to report a change in residence from June 1, 2007, through June 11, 2007. In contrast, the State argues that

LeClair had a legal duty to register within 10 days of his June 1, 2007, departure from Salina.

*We offer some general points of law useful in this appeal.*

Obviously, we must interpret the Kansas Offender Registration Act found at K.S.A. 22-4901 *et seq.* in order to settle this appeal. Statutory interpretation is a question of law over which this court has unlimited review. *State v. Jefferson,* 287 Kan. 28, 33, 194 P.3d 557 (2008). The first rule of statutory construction is that the intent of the legislature governs if the court can ascertain that intent. *Hall v. Dillon Companies, Inc.,* 286 Kan. 777, 785, 189 P.3d 508 (2008). Therefore, an appellate court's first task is to " 'ascertain the legislature's intent through the statutory language it employs, giving ordinary words their ordinary meaning.' [Citation omitted.]" *State v. Gracey,* 288 Kan. 252, 257, 200 P.3d 1275 (2009).

When a statute is plain and unambiguous, it is not the province of an appellate court to speculate about the legislative intent behind it or read the statute to add something not readily found in it. In such a case, an appellate court need not resort to statutory construction. " 'It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent.' [Citation omitted.]" *Double M Constr. v. Kansas Corporation Comm'n,* 288 Kan. 268, 271-72, 202 P.3d 7 (2009). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Breedlove,* 285 Kan. 1006, 1015, 179 P.3d 1115 (2008).

Finally, courts must strictly construe criminal statutes in favor of the accused. The court must decide any reasonable doubt about the meaning of the statute in favor of the accused. Even so, this rule of strict construction is subordinate to the rule that judicial interpretation must be reasonable and sensible so the court can effectuate legislative design and intent. *Gracey,* 288 Kan. at 257-58.

*We look to the plain meaning of the words used in this statute.*

Within 10 days of *changing his or her address*, an offender required to register under K.S.A. 22-4904(b) must inform *in writing* the law enforcement agency where such offender last registered and the Kansas Bureau of Investigation of their new address. Obviously, the law intends for law enforcement officials to know the whereabouts of the people who are required to register. A violation of this reporting provision is a severity level 5 person felony. The Act offers no definition for the term "residence." Further, we have found no case law deciding whether an offender changes his residence when he or she leaves or when he or she establishes a new residence.

The Kansas Supreme Court has consistently held the purpose of the Act is "to protect the public from sex offenders as a class of criminals who are likely to reoffend and to provide public access to the registration information required when an offender falls within the provisions of the [the Act]." *State v. McElroy*, 281 Kan. 256, 263, 130 P.3d 100 (2006); accord *State v. Wilkinson*, 269 Kan. 603, 609, 9 P.3d 1 (2000); *State v. Myers*, 260 Kan. 669, 679-81, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997).

Black's Law Dictionary 1423 (9th ed. 2009) defines residence as: (1) "[t]he act or fact of living in a given place for some time"; (2) "[t]he place where one actually lives, as distinguished from a domicile"; or (3) "bodily presence as an inhabitant in a given place." From June 1, 2007, through June 11, 2007, LeClair was both physically present and living in places other than Salina. Therefore, using the ordinary meaning of residence as delineated in Black's Law Dictionary, LeClair violated K.S.A. 22-4904(b) by failing to report his change in address of residence to the sheriff's department and the KBI when he left Salina, never to return. The district court's finding that LeClair failed to notify the sheriff's department within 10 days of his June 1, 2007, departure from Salina is supported by the evidence. LeClair was not taking a vacation, he was leaving town.

In our view, LeClair was changing his address when he left Salina and was required to inform the sheriff's department of that

fact within 10 days of his move. An offender required by law to register at the local sheriff's office and the Kansas Bureau of Investigation must notify those offices in writing when he or she intends to permanently leave a residence whether he or she has established a new residence or not. To rule otherwise, as LeClair would have us do, would make the reporting provision meaningless for those who choose, for whatever reason, not to establish a new residence. Such an interpretation is consistent with protecting the public. Otherwise, an offender could then evade registration requirements by leading a transient lifestyle, thereby undercutting the statute's important purposes.

*There is ample evidence of LeClair's intent.*

LeClair next argues there was insufficient evidence to sustain his conviction because the State did not prove beyond a reasonable doubt that he intentionally failed to comply with the Act. The State argues that LeClair had the requisite intent to commit the crime because he intentionally changed his residence without notifying the sheriff's department.

When a criminal defendant challenges the sufficiency of the evidence, "the standard of review is whether after reviewing all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Gant,* 288 Kan. 76, 83, 201 P.3d 673 (2009).

Under K.S.A. 22-4904(b) and the duties spelled out in his registration form, LeClair was required to report any changes in his address of residence within 10 days to the law enforcement agency where he last registered as well as to the KBI. Like any other statute, criminal intent is a requisite element of the crime of failure to report. See K.S.A. 21-3201(a). Intentional conduct is defined as conduct that is purposeful, willful, and not accidental. K.S.A. 21-3201(b).

The Kansas Supreme Court had held that the failure to register under K.S.A. 22-4903 and K.S.A. 22-4904 is a general intent crime. *In re C.P.W.,* 289 Kan. 448, 455-56, 213 P.3d 413 (2009). To prove

general intent, the State need not prove that the defendant intended a precise harm or result that occurred. 289 Kan. at 454. All that the State is required to prove in such a case is that the defendant was conscious of the act he or she was committing without necessarily understanding the consequences of that action. *State v. Spicer*, 30 Kan. App. 2d 317, 324, 42 P.3d 742, *rev. denied* 274 Kan. 1117 (2002).

In construing the facts in the light most favorable to the prosecution, as we are required to do, there is no doubt that a rational factfinder could have found that LeClair failed to register from June 1, 2007, through June 11, 2007. On June 1, 2007, LeClair permanently left Salina and traveled to Las Vegas. Prior to leaving Salina, LeClair never notified the sheriff's department. He did mail a letter to the sheriff's department on June 5, 2007, from Provo, Utah. In the letter LeClair told the sheriff's department that he was leaving Kansas and was not planning to return. In addition, the letter contained a promise that he would contact law enforcement when he got to where he was going. The letter did not tell the sheriff's office his whereabouts nor where he could be reached. After that the sheriff's department received no additional notifications or registration documents from LeClair.

From the time LeClair left Salina on June 1, 2007, until July 9, 2007, he failed to report his residence or whereabouts to the sheriff's department. LeClair acknowledged this failure but testified that he intentionally chose to defer his registration until he was more permanently settled in a location. LeClair further testified that in the interim, he felt that the letter he sent to the sheriff's department would suffice. There is sufficient evidence of his intent in this record; LeClair did not accidentally pack up and move, he did so intentionally.

Affirmed.