No. 101,201

STATE OF KANSAS, *Appellee*, v. DOUGLAS LeCLAIR, *Appellant*.

(287 P.3d 875)

Opinion filed October 26, 2012.

*Meryl Carver-Allmond*, of Kansas Capitol Appellate Defender Office, argued the cause and was on the brief for appellant.

*Christina Trocheck*, assistant county attorney, argued the cause, and *Ellen Mitchell*, county attorney, *Derek Schmidt*, attorney general, and *Steve Six*, former attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

NUSS, C.J.: Sex offenders must inform their local law enforcement agency within 10 days of changing their address of residence per K.S.A. 22-4904(b). Registered sex offender Douglas LeClair left his Salina residence on June 1, 2007. He then traveled the southwest United States for approximately 3 weeks before settling in Las Vegas, Nevada, and registering as an offender on July 9.

LeClair was convicted of one count of failing to notify the Saline County Sheriff within 10 days of changing his address of residence—for the time period of June 1-11. The Court of Appeals affirmed LeClair's conviction, rejecting his argument that he had not yet established a new residence and therefore had no duty to register during that 10-day period. We granted LeClair's petition for review under K.S.A. 20-3018(b), and we now reverse.

## FACTS

In 1988 Douglas LeClair pleaded guilty to statutory rape and indecent liberties in Washington state. He later moved to Salina and duly registered as a sex offender with the Saline County Sheriff's Department on April 4, 2007.

The following June 1, LeClair caught a ride with his landlord to the Salina bus station. LeClair told his landlord that he planned on going to Las Vegas, Nevada. LeClair traveled to Las Vegas but left after spending a couple of nights in a shelter. He then hitchhiked to Salt Lake City and Provo in Utah. While in Provo, he mailed a letter postmarked June 5 to the Saline County Sheriff's Office, which stated, "I, Douglas M. LeClair, . . . a registered sex offender in Saline County, am leaving the State of Kansas. I will not be returning. When I get to where I am going, 1 will contact local law enforcement."

For the remainder of the first 3 weeks of June, LeClair hitchhiked to Flagstaff and Phoenix in Arizona and to Santa Maria in California. He testified he often slept outside in the "bush" on the roadside in a sleeping bag. And he never stayed in one city for more than 3 or 4 days.

During the third week in June, LeClair moved to Las Vegas, eventually renting an apartment on June 30. Within 10 days, on July 9, he registered as an offender with the Las Vegas Metropol-

itan Police Department. He testified that he "thought he had done everything [he] was supposed to do" under the Kansas Offender Registration Act (KORA), K.S.A. 22-4901 *et seq.*, because when registering in Nevada, he confirmed that the Las Vegas police would notify the State of Kansas. The Las Vegas police did notify the Saline County Sheriff via email on March 12, 2008, that LeClair had registered with them on July 9, 2007.

In October 2007, the State charged LeClair with five counts of failing to register as an offender as required by the KORA. See K.S.A. 22-4903. Count 1 charged that he failed to inform the Saline County Sheriff's Department of his new address within 10 days of leaving Salina: June 1 through June 11, 2007. Counts 2-5 charged him with similarly failing to inform the department for four consecutive 30-day periods between June 11 and October 11, 2007.

After a bench trial, the district court found LeClair guilty of Count 1 but acquitted him of Counts 2-5. Failure to register as an offender is a severity level 5 person felony under K.S.A. 22-4903, and the district court sentenced him to 24 months' incarceration and 24 months' postrelease supervision. LeClair appealed, and the Court of Appeals affirmed. *State v. LeClair*, 43 Kan. App. 2d 606, 228 P.3d 1103 (2010).

## ANALYSIS

Issue: *The evidence is insufficient to support LeClair's conviction.*

### Standard of Review

LeClair argues that his conviction lacks sufficient evidence as a matter of law. In analyzing this issue, we consider "whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. McWilliams*, 295 Kan. 92, Syl. ¶ 1, 283 P.3d 187 (2012).

To support LeClair's argument, he more particularly asks that we interpret K.S.A. 22-4904(b). Interpretation of a statute is a question of law, and this court's review is unlimited. Accordingly,

we are not bound by the lower courts' interpretation of a statute. *State v. Nambo*, 295 Kan. 1, 3, 281 P.3d 525 (2012).

*Discussion*

The statute LeClair asks us to interpret, K.S.A. 22-4904(b), states

"[i]f any person required to register as provided in this act *changes the address of the person's residence*, the offender, within 10 days, shall inform in writing the law enforcement agency where such offender last registered and the Kansas bureau of investigation of the new address." (Emphasis added.)

Citing Black's Law Dictionary 1423 (9th ed. 2009), the Court of Appeals panel defined "residence" as "(1) '[t]he act or fact of living in a given place for some time'; (2) '[t]he place where one actually lives, as distinguished from a domicile'; or (3) *'bodily presence as an inhabitant in a given place.'* " (Emphasis added.). *LeClair*, 43 Kan. App. 2d at 610. Apparently emphasizing this latter exposition, the panel determined that LeClair changed the address of his residence once he simply left Salina. Because he left on June 1 but did not register with Las Vegas police until July 9, the panel affirmed LeClair's conviction on Count 1.

Before this court, LeClair argues that the panel's definition of residence is too broad. He asserts that if he were required to notify the authorities every time his "bodily presence" inhabited a given place, he would have to provide notification for even short trips to the grocery store. LeClair contends that for practical reasons we should interpret K.S.A. 22-4904(b) in his favor and a "residence" should require an intent to remain in a given location. See *Estate of Schoof v. Schoof*, 193 Kan. 611, 614, 396 P.2d 329 (1964) (residence requires bodily presence at location coupled with an intent to remain either permanently or for an indefinite period). He therefore argues that a "change of address of residence" can only occur when an offender actually obtains a new residence, *i.e.*, by intending to remain in that location.

The State responds that we should adopt the panel's definition of "residence." It argues that because LeClair both "lived in" and especially was "bodily present" in several southwestern cities for a while before he registered in Las Vegas, he could have reported

those addresses to the Saline County Sheriff. The State particularly contends that the broad legislative intent behind KORA—protection of public safety—supports its statutory interpretation. We disagree with the State for several reasons.

First, we have stated that we will not judicially amend KORA to satisfy its overall legislative purpose. See *State v. Fredrick*, 292 Kan. 169, 174, 251 P.3d 48 (2011). We reiterate that "our role is to determine the legislature's intent through the statutory language employed." 292 Kan. at 174-75; see *State v. Hendrix*, 289 Kan. 859, Syl. ¶ 2, 218 P.3d 40 (2009) ("Intent of the legislature is to be derived in the first place from the words used.").

Second—and concordant with our role stated above—we are required to follow the rules of statutory construction set out at K.S.A. 77-201 unless "the construction would be inconsistent with *the manifest intent of the legislature* or repugnant to the context of the statute." (Emphasis added.) And K.S.A. 77-201 *Twenty-third* specifically defines "residence":

" 'Residence' means the place which is adopted by a person as the *person's place of habitation* and to which, whenever the person is absent, the person has the *intention of returning*. When a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence." (Emphasis added.)

This statutory definition of residence—that it be an actual place of habitation and where the absent person intends to return— clearly is not inconsistent with the manifest intent of the legislature as expressed by the plain language of K.S.A. 22-4904(b). See *Hendrix*, 289 Kan. 859, Syl. ¶ 2 (legislative intent first derived from words it used). Nor is the definition repugnant to 22-4904(b)'s context, again based upon the statute's plain language.

There is no inconsistency or repugnancy because the statute distinctly requires that once the offender "changes the *address* of the person's residence," the offender must register within 10 days of obtaining "the *new address*" of residence. (Emphasis added.) K.S.A. 22-4904(b). So we must reject the State's contention at oral argument that LeClair's "address of residence" could be a one-night stay on a park bench. Among other things, it is difficult to imagine how under 22-4904(b) an offender should inform law en-

forcement of his "new [residential] address" as a "park bench in Albuquerque." And it is equally difficult to imagine how that park bench for one night establishes a "change [in] the address of the person's residence." Consequently, we conclude that under K.S.A. 22-4904(b), an offender does not change the address of residence until obtaining a new place of habitation where the person intends to remain. This conclusion necessarily rejects the panel's holding that under this statute an address of residence simply means one's bodily presence at a location.

Now that we have crossed the threshold of analyzing the statute, we turn to LeClair's argument—that the evidence is insufficient to support his conviction. We begin by observing he was only convicted of failing to register between June 1 and June 11, 2007. If, as LeClair argues, he did not obtain a new address of residence during that time period, he was not required to register under K.S.A. 22-4904(b). And the evidence necessarily would be insufficient to convict on the crime for which he was charged. See *State v. Houck*, 240 Kan. 130, 135-36, 727 P.2d 460 (1986).

According to LeClair's testimony, after taking a bus from Salina on June 1, he hitchhiked to six cities in the Southwest for approximately the next 3 weeks. He never stayed in one city for more than 3 or 4 days. He did not register as an offender while visiting those cities because he "wasn't staying anywhere . . . [and] was sleeping out in the bush." Other than the landlord's testimony that LeClair was going to Las Vegas, the State presented nothing to attempt to contradict LeClair's testimony. It instead relied upon its interpretation of the statute as discussed above.

Based upon this essentially unrefuted evidence, we conclude that between June 1 and June 11, 2007, LeClair never adopted a "place of habitation," to which, whenever he was absent, he had "the intention of returning." See K.S.A. 77-201 *Twenty-third*. Accordingly, during that time period he did not "change the address of his residence" to a "new address." See K.S.A. 22-4904(b). So he was not required to register under 22-4904(b). And his conviction therefore must be reversed.

Although our analysis is concluded, we note that since June 2007, legislation has passed that would have likely required an of-

fender in LeClair's situation to have registered after he left Salina but before he established a new residence. See K.S.A. 2011 Supp. 22-4905(e) (stating that a transient offender must "report in person to the registering law enforcement agency of such county or location of jurisdiction in which the offender is physically present within 3 business days of arrival in the county or location of jurisdiction").

The judgment of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed.