NOT DESIGNATED FOR PUBLICATION

No. 112,835

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GABRIEL E.I. MITCHELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed September 23, 2016. Affirmed.

*Peter Maharry*, of the Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., MCANANY and GARDNER, JJ.

*Per Curiam*:  Gabriel Mitchell appeals from his conviction of failing to register as a drug offender as required by the Kansas Offender Registration Act (KORA). Because of his 2008 federal drug conviction, KORA required that Mitchell register during the anniversary month of his birth and every 3 months thereafter for a period of 15 years. Mitchell registered in January 2012. But when he failed to renew his registration in April 2012, the State charged him with violating the act.

Mitchell moved the district court to dismiss the State's charge based on his contention that the State had no authority to modify his federal sentence by requiring

1

registration. Further, when Mitchell committed his drug crime in 2005 the KORA provision for registration of drug offenders had not yet come into existence in Kansas. The legislature added the provision for drug offender registration in July 2007. Thus, Mitchell argued that under the Ex Post Facto Clause of the United States Constitution, the State could not retroactively impose the added punishment of registration. The district court denied Mitchell's motion.

At trial Emily Adams was the State's sole witness. She was the offender registration coordinator of the Shawnee County Sheriff's Department. She testified that Mitchell was required to register every January, April, July, and October. Registration was required if an offender lives in Kansas, works in Kansas, or goes to school in Kansas. In January 2012, Mitchell registered and gave for his address an apartment on Southwest 29th Street in Topeka. But he failed to register in April 2012. As a result, Adams sent officers to the apartment listed on Mitchell's January 2012 registration to check out the situation.

Mitchell eventually registered in June 2012. At that time he identified as his residence the same Topeka apartment that he had listed as his residence when he registered in January 2012. Further, he identified the same Topeka apartment as his residence when he registered in July 2012 and in October 2012. Adams believed that Mitchell still resided in Shawnee County in April 2012 despite his failure to register that month.

Mitchell testified in his own defense. He currently resides at a different apartment in Shawnee County. From Adams' testimony, we infer that he moved there sometime after October 2012.

According to Mitchell, when he registered on January 11, 2012, he listed his then current Topeka residence at the same apartment on Southwest 29th Street. He had lived at

2

this apartment for 9 or 10 years. He rented the apartment on a month-to-month basis. Two days after registering in January 2012, Mitchell traveled to Springfield, Missouri, where he stayed with his friend, Sarah Foth. Mitchell testified that he went to Missouri "to find a house and another job so I would not have to register or be jumping through all the hoops." When he went to Missouri he did not have a new address to identify as his residence, but he testified that he verbally told an assistant at the sheriff's office named Debra Hoffer that he changed his address. Mitchell knew he could not stay with Foth indefinitely because she was getting married. He stayed with her in Springfield until

> "I got a phone call from *my neighbor*, stating that a gentleman came and knocked on *my door* and left the—he said it looked like there was a card hanging out *my door*, so I told him to go and get the card, he took the card and told me that it was a detective, and then I went ahead and came back and when I came back, I . . . saw that there was another card in *my door*. . . . I instantly called the sheriff's department and set up the date to come in and register." (Emphasis added.)

Mitchell testified that while in Missouri he looked for a new residence but had not found one by June 2012. When he registered in June 2012 in Shawnee County, he used the same address he had identified as his residence when he registered there in January 2012, though he said it was not where he resided. "I wasn't staying there." Mitchell testified, "[T]hat was an address I used in June, because that's the only one I had to write down, because I came back in town to register." The apartment address he used in the June registration was "the address that I could get mail at and this is the one that I put on the application." He denied maintaining the Topeka apartment as his residence during the period he was in Springfield, Missouri. "Did I maintain one? No. I didn't have to pay nothing on it, zero dollars." Mitchell testified that he did not work, go to school, or live in Kansas during April or May 2012.

Before the case was submitted to the jury, the State moved to amend its complaint to alternatively charge Mitchell with violating KORA by failing to give notice of a

3

change of address. The court denied the motion. The case was submitted to the jury, and the jury found Mitchell guilty of failing to register as required by KORA.

The court denied Mitchell's posttrial motions and sentenced Mitchell to 18 months in prison but granted probation for 24 months. Mitchell appeals.

*Ex Post Facto*

Mitchell first argues that the retroactive application of KORA violates the Ex Post Facto Clause of the United States Constitution because there was no requirement to register for drug offenses at the time he committed his underlying drug crime in 2005. This is an issue of law over which we have unlimited review. *State v. Hilt*, 299 Kan. 176, 202, 322 P.3d 367 (2014).

In 1997 the Kansas Sexual Offender Registration Act (KSORA) was renamed the "Kansas Offender Registration Act" and in 2007 was expanded to include registration by offenders who had been convicted of drug crimes. See K.S.A. 2015 Supp. 22-4901; K.S.A. 2015 Supp. 22-4902. Mitchell argues that requiring him to register under the 2007 KORA enactment for a pre-2007 crime, and charging him criminally for failure to do so, constitutes retroactive punishment forbidden by the Ex Post Facto Clause.

A statute violates the Ex Post Facto Clause when it punishes an act as a crime that was not punishable when committed or "'makes more burdensome the punishment for a crime, after its commission.'" *State v. Myers*, 260 Kan. 669, 676, 923 P.2d 1024 (1996), *cert. denied* 521 U.S. 1118 (1997).

The district court did not err in rejecting this contention. In *State v. Petersen-Beard*, 304 Kan. 192, 195, ___ P.3d ___ (2016), *petition for cert. filed* July 21, 2016, the defendant argued that lifetime sex offender registration constituted cruel and/or unusual

4

punishment. Our Supreme Court held that KORA sex offender registration was not punishment for the purpose of applying provisions of the United States or Kansas Constitutions. To the contrary, the Supreme Court held that the legislature intended the "provisions of KORA to be a nonpunitive and civil regulatory scheme rather than punishment. [Citations omitted.]" 304 Kan. at 195. *Petersen-Beard* is the latest pronouncement by our Supreme Court on this issue.

Mitchell argues that the holding in *Petersen-Beard* should not extend to drug offenders. He notes that KORA has been expanded to include many offenses, including drug offenses, and the penalties for violation of KORA have increased to person felonies. He points to the $20 fee required at the time of registration, noting that criminal fines are forms of punishment. But we previously rejected this argument in *State v. Unrein*, 47 Kan. App. 2d 366, 372, 274 P.3d 691 (2012), *rev. denied* 297 Kan. 1256 (2013), which found "the $20 fee is not punishment but a way to reimburse sheriff's offices for services provided in the regulatory scheme."

Mitchell argues further that KORA registration is a form of punishment because (1) it adversely affects his employment and housing prospects, (2) the in-person reporting process is onerous, (3) registration is designed to publicly shame the offender rather than to serve as a deterrence, (4) registration leads to increased recidivism of offenders, and (5) the penalties for failing to register are excessive. But these arguments have already been addressed and rejected in the context of either sex offender registration or drug offender registration in a number of cases. See *Smith v. Doe*, 538 U.S. 84, 105-06, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003); *United States v. Brunner*, 726 F.3d 299, 304 (2d Cir. 2013); *United States v. Parks*, 698 F.3d 1, 5-8 (1st Cir. 2012); *United States v. Hinkley*, 550 F.3d 926, 937-38 (10th Cir. 2008), *abrogated on other grounds by Reynolds v. United States*, 132 S. Ct. 975 (2012); *State v. Myers*, 260 Kan. 669, 923 P.2d 1024 (1996); *State v. Simmons*, 50 Kan. App. 2d 448, 457, 329 P.3d 523 (2014), *petition for rev. granted* June 27, 2016; *State v. Burdick*, No. 110,472, 2015 WL 2342145, at * 6-7

5

(Kan. App. 2015) (unpublished opinion), *petition for rev. filed* June 8, 2015; *State v. Richardson*, No. 107,786, 2013 WL 3867329, at *2-3 (Kan. App. 2013) (unpublished opinion), *petition for rev. granted* June 21, 2016; *State v. Scuderi*, No. 107,114, 2013 WL 3791614, at *5-6 (Kan. App. 2013) (unpublished opinion), *petition for rev. granted* June 21, 2016; *State v. Brown*, No. 107,512, 2013 WL 2395319, at *1-4 (Kan. App. 2013) (unpublished opinion), *petition for rev. filed* June 24, 2013; *State v. Hall*, No. 106,903, 2013 WL 646482, at *3-4 (Kan. App.) (unpublished opinion), *rev. denied* 297 Kan. 1250 (2013).

Relying on the reasoning in these cases, we conclude that drug offender registration under KORA does not violate the Ex Post Facto Clause of the United States Constitution.

*Improper Sentence Modification*

When Mitchell was sentenced for his federal drug conviction, he was not ordered to register as an offender. Mitchell argues that by imposing a duty to register under KORA the State illegally modified his federal sentence. This claim raises an issue of statutory interpretation which is a question of law over which our review is unlimited. *State v. Phillips*, 299 Kan. 479, 494, 325 P.3d 1095 (2014).

The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). We first attempt to determine legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Phillips*, 299 Kan. at 495. Generally, a criminal statute should be strictly construed in favor of the accused, and any reasonable doubt about a statute's meaning must be decided in favor of the accused. But this rule is subordinate to the rule that judicial interpretation must be reasonable and sensible in order to give effect to the legislative design and intent of the law. *State v.*

*Cameron*, 294 Kan. 884, 899, 281 P.3d 143 (2012). The rule of lenity arises only when there is a reasonable doubt as to the meaning of a statute. *State v. Beaman*, 295 Kan. 853, 868, 286 P.3d 876 (2012).

Mitchell relies on *State v. Dandridge*, No. 109,066, 2014 WL 702408, at *3 (Kan. App. 2014) (unpublished opinion), which holds that offender registration is part of a criminal sentence. But a contrary holding is found in *State v. Simmons*, 50 Kan. App. 2d 448, 329 P.3d 523 (2014), *rev. granted* June 21, 2016, which was issued 4 months after *Dandridge*.

In *Simmons*, the defendant was not ordered to register as a part of her sentence in 2005 because at that time KORA did not require drug offenders to register. The provision for drug offender registration was added in 2007, and Simmons was required to register thereafter. When Simmons later violated KORA's periodic reregistration requirement, she argued that requiring her to register as a drug offender for a prior conviction that did not require registration at the time she was originally sentenced illegally modified the original sentence imposed.

After considering the statutory scheme of KORA in its entirety, the panel found that the registration requirement was not part of Simmons' sentence but was intended by the legislature to "be imposed automatically by operation of law as a nonpunitive collateral consequence of judgment that is distinct from, and not part of, a criminal sentence." 50 Kan. App. 2d at 457. See *State v. Kilpatrick*, No. 111,055, 2015 WL 1123021, at *3 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* April 2, 2015. The *Kilpatrick* court stated:

> "The registration requirements under KORA are imposed automatically by operation of law and, as reflected here, were not a part of Kilpatrick's original drug sentence in 2006. Thus, there is no merit to Kilpatrick's claim his original sentence in 2006 was modified.

7

The requirement to register pursuant to KORA did not modify Kilpatrick's original 2006 drug-related sentence." 2015 WL 1123021, at *4.

We find the reasoning in *Simmons* and *Kilpatrick* persuasive and conclude that the imposition of the KORA registration requirement on Mitchell did not illegally modify his prior federal sentence.

*Sufficiency of the Evidence*

Mitchell contends that the evidence presented at trial was insufficient to support his conviction for failing to register as required by KORA. Mitchell claims the State failed to produce any evidence that he resided in Kansas during April 2012 to support a conviction under KORA.

In considering this claim we review the evidence in the light favoring the State to determine whether a rational factfinder could have found Mitchell guilty beyond a reasonable doubt. In doing so, we do not reweigh the evidence, assess the credibility of witnesses, or resolve conflicts in the evidence. *State v. Longoria*, 301 Kan. 489, 532-33, 343 P.3d 1128 (2015).

A verdict may be supported by circumstantial evidence, if such evidence provides a basis from which the factfinder may reasonably infer the existence of the fact in issue. The evidence need not exclude every other reasonable conclusion or inference. *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014). A conviction of even the gravest offense can be based entirely on circumstantial evidence. 298 Kan. at 689.

Mitchell relies on *State v. LeClair*, 295 Kan. 909, 287 P.3d 875 (2012), to support his contention that he no longer resided in Kansas during the time the State claimed he was required to register. In *LeClair*, the defendant left his residence in Saline County and

8

travelled through several states, rarely staying in one place for more than a few days. After about 3 weeks of travel, he settled in Las Vegas where he rented an apartment. LeClair was charged in Kansas and convicted of failing to register in Saline County within 10 days of leaving Saline County. The Kansas Supreme Court held that "an offender does not change the address of residence until obtaining a new place of habitation where the person intends to remain." 295 Kan. at 914. The Court rejected the argument that one could maintain a residence merely by being present at a location. 295 Kan. at 914. The applicable definition of "residence" at the time of LeClair's claimed offense stated:

> "'Residence' means the place which is adopted by a person as the person's place of habitation and to which, whenever the person is absent, the person has the intention of returning. When a person eats at one place and sleeps at another, the place where the person sleeps shall be considered the person's residence." 295 Kan. at 913.

Similarly, our court determined in *State v. Hendricks*, No. 112,648, 2016 WL 563002, at *5 (Kan. App. 2016) (unpublished opinion), that the defendant had not obtained a new residence where he intended to remain, so his conviction for failure to register a change of address within the time required was reversed.

Of course, *LeClair* and *Hendricks* are different in that the defendants in those cases were charged with failure to register when they moved to a new residence. Our case is the converse: failure to register when the defendant has not, in fact, moved to a new residence. Also, in our present case the legislature's definition of "residence" had changed from that in *LeClair*. The statute now provides: "'Residence' means a particular and definable place where an individual resides. Nothing in the Kansas offender registration act shall be construed to state that an offender may only have one residence for the purpose of such act." K.S.A. 2015 Supp. 22-4902(k). Further, "reside" is now defined as follows:

9

"'Reside' means to stay, sleep or maintain with regularity or temporarily one's person and property in a particular place other than a location where the offender is incarcerated. It shall be presumed that an offender resides at any and all locations where the offender stays, sleeps or maintains the offender's person for three or more consecutive days or parts of days, or for ten or more nonconsecutive days in a period of 30 consecutive days." K.S.A. 2015 Supp. 22-4902(j).

Under these broader definitions of "reside" and "residence," for purposes of requiring registration under KORA a person can maintain more than one residence.

We do not make our own factual determination from the evidence to determine whether Mitchell violated KORA's registration requirements. That would require us to reweigh the evidence and to make determinations about the believability of the testimony at trial. Those were matters for the jury to resolve, not us.

Here, there is circumstantial evidence that Mitchell continued to reside in Topeka in spite of his sojourn in Missouri. In January 2012, Mitchell registered using his Topeka apartment address. Two days later, he traveled to Springfield, Missouri, where he stayed with a friend. But he could not stay with her indefinitely because she was getting married. So he looked for a residence in the area but was unable to find one.

Under the broad definition of "reside," it appears that Mitchell was residing with his Missouri friend, albeit temporarily. But under the broad definition of "residence," Mitchell could maintain more than one residence. K.S.A. 2015 Supp. 22-4902(k). Mitchell resided in Topeka in January 2012. The evidence supports the proposition that Mitchell did not abandon his residence in Topeka while he unsuccessfully looked for a new residence in Missouri. He stayed with his Missouri friend until he got a call from his "neighbor" at the Topeka apartment who told him about "a card hanging out my door" from a Shawnee County detective. Mitchell returned to Topeka and resumed his ongoing residence there. He reregistered using the same apartment address as before. He testified

10

that the Topeka apartment was "the address that I could get mail at." In fact, he continued to register at the Topeka apartment address until he moved sometime after October 2012. Viewing the evidence in the light favoring the State, there is substantial evidence to support Mitchell's conviction.

*Closing Argument*

Mitchell claims the prosecutor engaged in misconduct in closing argument by referring to Mitchell's uncharged conduct of failing to give notice of his change of address to the KBI as required by KORA.

At the close of all the evidence, the State moved to amend its complaint to alternatively charge Mitchell with violating KORA by failing to give notice of a change of address under K.S.A. 2015 Supp. 22-4905(a) and (g). The court denied the State's motion. But the court's jury instructions included the following:

> "Instruction Number 7:  Evidence has been admitted that may tend to prove that the defendant committed a crime other than the present crime charged. This evidence may only be considered solely for the purpose of proving the defendant was required to register as an offender in Shawnee County, Kansas."

In closing argument the prosecutor repeatedly referred to the fact that Mitchell did not notify the KBI that he had changed his address.

Our Supreme Court recently revamped the concept of and standard of review for prosecutorial misconduct. In the context of whether a criminal conviction is reversible due to the inappropriate actions of a prosecutor during trial, the nomenclature has been changed to prosecutorial error. *State v. Sherman*, 305 Kan. ___, ___ P.3d ___, 2016 WL 4719688, at *13 (September 9, 2016).

11

Under the modified standard of review, we use a two-step process to evaluate the claim of prosecutorial error:

> "These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801, (2011), *cert. denied* 132 S. Ct. 1594 (2012)." *Sherman*, 2016 WL 4719688, at *14.

The prosecutor is permitted wide latitude when commenting on the evidence in closing argument. The wide latitude afforded to prosecutors allows them to craft arguments to include reasonable inferences that may be drawn from the evidence and to suggest that a defendant's theory of the case is not believable. *State v. Hart*, 297 Kan. 494, 505, 301 P.3d 1279 (2013). See *State v. Marshall*, 294 Kan. 850, 863-64, 281 P.3d 1112 (2012). A prosecutor may comment on inconsistencies in a defendant's statements or may point out weaknesses in a story. *State v. Bridges*, 297 Kan. 989, 1013, 306 P.3d 244 (2013).

Here, the prosecutor's comments were based on evidence introduced at trial. Mitchell testified without objection that he did not register a change of address with the sheriff's office or with the KBI when he went to Missouri. He did claim, however, that he orally advised a person in the sheriff's office that he would be moving.

12

The evidence that Mitchell did not provide written notice of his move to Missouri supported the State's contention that Mitchell continued to maintain his residence in Topeka in April 2012. Otherwise, he would have been risking a KORA violation by failing to provide the required written notice to the KBI of his relocation to Missouri. The court's jury instructions correctly informed the jury of the elements the State had to prove to sustain a conviction and how they were to treat this evidence about Mitchell's failure to register with the KBI. Juries are presumed to have followed the court's jury instructions. *Miller v. State*, 298 Kan. 921, 937, 318 P.3d 155 (2014).

We find no impropriety in the prosecutor's closing argument. Consequently, we need not reach the second step in the analysis regarding prejudice.

*Jury Instructions*

Finally, Mitchell contends that the jury instructions were clearly erroneous because they did not instruct the jury that it must find that Mitchell resided in Kansas in order to find him guilty. We review this contention using our Supreme Court's four-step analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" *State v. Woods*, 301 Kan. 852, 876, 348 P.3d 583 (2015) (quoting *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 [2012]).

Further, in considering an objection to a jury instruction, we examine the "'jury instructions as whole, without focusing on any single instruction, in order to determine whether they properly and fairly state the applicable law or whether it is reasonable to conclude that they could have misled the jury.' [Citation omitted.]" *State v. Hilt*, 299 Kan. 176, 184-85, 322 P.3d 367 (2014). See *State v. Williams*, 42 Kan. App. 2d 725, Syl. ¶ 1, 216 P.3d 707 (2009), *rev. denied* 290 Kan. 1104 (2010).

Mitchell objected to the jury instruction providing the elements of the charged crime on the grounds that the instruction failed to make clear that he could be convicted only if it found that he resided in Kansas. The district court overruled the objection and instructed on the elements of the crime following PIK Crim. 4th 63.140:

"The defendant is charged with failure to register as an offender. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant had been convicted of Possession with Intent to Distribute Cocaine.
"2. The defendant failed to report in person with the registering law enforcement agency once during the month of April 2012, the third month occurring after the month of the defendant's birthday.
"3. This act occurred on or about the 1st day of May, 2012.
"4. The defendant was required to register as an offender in Shawnee County, Kansas.
"A person convicted of Possession with Intent to Distribute Cocaine must register in any county in which the person resides, maintains employment, or attends school."

Our Supreme Court has stated: "We strongly recommend the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions. See *State v. Dixon*, 289 Kan. 46, 67, 209 P.3d 675 (2009)." *State v. Barber*, 302 Kan. 367, 377-78, 353 P.3d 1108 (2015).

14

The district court had a duty to define in the jury instructions the offense charged, and each of its elements, either in the language of the statute or in appropriate and accurate language of the court. *State v. Richardson*, 290 Kan. 176, Syl. ¶ 1, 224 P.3d 553 (2010). Both the state and federal constitutions require that a right to a jury trial includes the right to have the jury determine each element of the charged offense. See *Neder v. United States*, 527 U.S. 1, 4, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999) (federal constitution requires jury determination of each element of a crime); *State v. Brown*, 298 Kan. 1040, 1045, 318 P.3d 1005 (2014) (a defendant has the right to have all the elements of the charged crime decided by the jury under the Sixth Amendment and §10 of the Kansas Constitution Bill of Rights).

Here, the challenged instruction specifically provided that the State had to prove that "[t]he defendant was required to register as an offender in Shawnee County, Kansas." Adams testified that Mitchell was required to register in Kansas if he lived, worked, or attended school in Kansas. There is no testimony that Mitchell was required to register in Missouri. Mitchell specifically testified that he went to Missouri because he would not have to register there as an offender. There was no evidence to the contrary. We find no error in the district court denying Mitchell's proposed change to this instruction and in giving the standard PIK instruction defining the elements of the charged crime.

Affirmed.