IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,629

STATE OF KANSAS,
*Appellee*,

v.

CHARITY DOWNING,
*Appellant.*

SYLLABUS BY THE COURT

1.

Under K.S.A. 2018 Supp. 21-5807(a)(1), burglary is, without authority, entering into or remaining within any dwelling, with intent to commit a felony, theft, or sexually motivated crime therein.

2.

The term "dwelling" in K.S.A. 2018 Supp. 21-5807(a)(1) is defined in K.S.A. 2018 Supp. 21-5111(k) to mean "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence."

3.

Absent proof the place burgled was used as a human habitation, home, or residence when the crime occurred, a conviction for burglary under K.S.A. 2018 Supp. 21-5807(a)(1) requires a showing of proof that, someone had a present, subjective intent at the time of the crime to use the place burgled for such a purpose.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 15, 2017. Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed January 24, 2020.

1

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Andrew R. Davidson*, senior assistant district attorney, argued the cause, and *Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: The State of Kansas seeks review after a Court of Appeals panel reversed a conviction of burglary of a dwelling based on the building owner's testimony that no one lived there when the crime occurred and that he had had no plans to live there or rent it out. *State v. Downing*, No. 116,629, 2017 WL 6397016 (Kan. App. 2017) (unpublished opinion). We agree with the panel. The statutory definition of "dwelling" requires proof the burgled place was used as a human habitation, home, or residence when the crime occurred, or proof that someone had a present, subjective intent at the time of the crime to use the burgled place for such a purpose. See K.S.A. 2018 Supp. 21-5111(k) (defining "dwelling" as "a building or portion thereof, a tent, a vehicle or other enclosed space *which is used or intended for use as a human habitation, home or residence*" [Emphasis added.]). And since the State's case lacked that proof, the panel correctly reversed the conviction and vacated the defendant's sentence.

FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Charity Downing of burglary of a dwelling and attempted theft under $1,000. The State alleged Downing was responsible for items missing from a rural

farmhouse. In his testimony, Jeff Keesling, the property owner, described it as a 100-year-old farmstead with a house, barns, and sheds. The prosecutor asked:

"Q.     Okay. Meaning is the house itself a residence, meaning people lived there?

"A.     Yes. It has been up until just a few, a couple years ago, three years ago and *then they moved out and it's sitting there empty* but it's still, we keep stuff in there and it's a huge house." (Emphasis added.)

When asked who lived at "this residence" before he owned it, Keesling said his grandparents, his father, his sister, her family, and himself had all lived in the house at various times. On cross-examination, Keesling agreed no one had lived at the farm for about two years, including at the time of the crime.

On redirect, the prosecutor had the following exchange with Keesling:

"Q.     Mr. Keesling, the residence there, was that, the house is basically intended for use as a residence even though it wasn't being lived in at the time?

"A.     Yes. *I would like somebody to live there but I can't. It's too dangerous to rent it to somebody with all my stuff out there*." (Emphasis added.)

In submitting the case to the jury, the district court instructed on the burglary charge:

"Instruction No. 6:  In Count One Charity Downing is charged with the offense of burglary. The Defendant pleads not guilty. To establish this charge each of the following claims must be proved:

3

1.    The defendant knowingly entered or remained within a building which is a dwelling, 35709 West Clark Road, Sylvia, Kansas.

2.    That the defendant did so without authority; and

3.    That the defendant did so with the intent to commit a theft therein; and

4.    That this act occurred on or about the 30th day of November, 2014 in Reno County, Kansas."

The term "dwelling" was not defined in the court's instructions. But during closing arguments, the State told the jury the farmhouse "was a house. That people lived in the house meaning it was a dwelling and that the people may not have lived there at the time but that property was intended as a dwelling and that's, they had property inside." Defense counsel countered,

"I submit we don't know for sure that [the building] is a dwelling. You heard people had previously lived there but it had been empty for a long time. It was used for storage. Storage upstairs, a few items downstairs. No one had lived there or used it as a dwelling for quite some time."

The State replied,

"[W]e know . . . that Mr. Keesling owned this house, that he had property in it and it was a dwelling. It was not a barn or a shed or an office. It was where people lived, a dwelling. Even though the law doesn't require that I prove that somebody lived there at the time it was intended as a dwelling. It was a dwelling and he had this house, he had stuff inside and he took pretty reasonable precautions to make sure nobody went in his house."

After the jury convicted Downing, she moved for judgment of acquittal, arguing the State failed to prove several elements of the charged offenses, including that the structure in question "was not being used as a dwelling, but was being used as storage." She simultaneously moved for a new trial asserting more generically that "[t]he evidence in the light most favorable to the State does not support the finding beyond a reasonable doubt that Ms. Downing committed either of the crimes stated above." The district court denied these motions without elaboration.

Downing timely appealed, and a Court of Appeals panel agreed with her that the State failed to prove beyond a reasonable doubt that the structure "'is used or [is] intended for use' as a place for human habitation." *Downing*, 2017 WL 6397016, at *2. It reversed the burglary conviction and vacated her sentence.

The State timely petitioned for this court's review, arguing the panel erred in two respects: (1) concluding the evidence could not support the burglary conviction, and (2) reversing the conviction, rather than remanding for resentencing on a lesser included charge. We granted review.

Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

THE STATE FAILED TO PROVE THE FARMHOUSE WAS A DWELLING

Whether sufficient evidence supports Downing's burglary conviction turns on whether the statutory definition of "dwelling" requires proof that someone had a present, subjective intention to use the burgled building as a human habitation, home, or residence because there was no evidence it was actually being used for any of those purposes when

5

the crime occurred. The State argues this intent can be inferred simply from the building's character. We disagree.

*Standard of review*

When a defendant challenges the evidence's sufficiency to support a conviction, an appellate court reviews "all the evidence in the light most favorable to the State" to determine whether "a rational fact-finder could have found the defendant guilty beyond a reasonable doubt." *State v. Howling*, 310 Kan. 633, 642, 448 P.3d 409 (2019). In doing so, the court does "not reweigh evidence, resolve evidentiary conflicts, or determine witness credibility . . . ." 310 Kan. at 642.

Resolving the sufficiency question in Downing's case requires interpretation of the burglary statute. See *State v. LeClair*, 295 Kan. 909, 911, 287 P.3d 875 (2012) (interpreting statute to resolve defendant's argument that "conviction lack[ed] sufficient evidence as a matter of law" based on defendant's own interpretation of statute). Statutory interpretation is a question of law over which an appellate court exercises unlimited review. *State v. Chavez*, 310 Kan. 421, 425, 447 P.3d 364 (2019).

*Discussion*

Under the Kansas criminal code,

"(a) Burglary is, without authority, entering into or remaining within any:

(1) Dwelling, with intent to commit a felony, theft or sexually motivated crime therein;

6

(2) building, manufactured home, mobile home, tent or other structure which is not a dwelling, with intent to commit a felony, theft or sexually motivated crime therein; or

(3) vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, with intent to commit a felony, theft or sexually motivated crime therein." K.S.A. 2018 Supp. 21-5807.

"'Dwelling' means a building or portion thereof, a tent, a vehicle or other enclosed space *which is used or intended for use as a human habitation, home or residence*." (Emphasis added.) K.S.A. 2018 Supp. 21-5111(k). The question in Downing's case is whether Keesling's farmhouse qualified as a dwelling under the statute when the facts indicate it was not being used for such purposes when the crime occurred and Keesling had no current plans to use it or rent it out even if he preferred to do so.

This court has not previously considered Downing's issue. But the Court of Appeals has identified circumstances to distinguish when a house or mobile home can be a dwelling when no one lives there. See, e.g., *State v. Alvis*, 30 Kan. App. 2d 889, 892, 53 P.3d 1232 (2002); *Herrick v. State*, 25 Kan. App. 2d 472, 478-79, 965 P.2d 844 (1998); *State v. Campbell*, No. 112,159, 2015 WL 5458574, at *4 (Kan. App. 2015) (unpublished opinion). These cases generally examined three factors—the owner's intended use for the property, the property's character, and the property's conditions—with inconsistent results.

In *Alvis*, which involved two houses, the panel held one was a dwelling within the statutory meaning because the owner intended to move into it five days after an attempted burglary, even though it was still under construction when the crime occurred. But the panel also held another home under construction was not a dwelling because there was no similar evidence showing occupancy was imminent and there was no evidence of its

7

conditions to indicate whether it was even capable of habitation. *Alvis*, 30 Kan. App. 2d at 891-92. In *Campbell*, a mobile home being restored after a fire was considered a dwelling because the owner intended to use it as a residence for his children, and not for anything else, such as a storage unit. The owner's intent to use the then-vacant, damaged mobile home as a residence was buttressed by the court's observation that this intended use was not improbable, since the fire damage was confined to a single bedroom while the remainder had only smoke damage. *Campbell*, 2015 WL 5458574, at *4.

In *Herrick*, a vacant house in a residential area was deemed a dwelling when there was "[n]o serious argument denying that the building in question was intended for use as a home . . . ." *Herrick*, 25 Kan. App. 2d at 478. The *Herrick* panel noted there was no evidence the house was "so dilapidated as to raise the issue of whether it could be used as a human habitation." 25 Kan. App. 2d at 479. And in *State v. Schultz*, 22 Kan. App. 2d 60, 63, 911 P.2d 1119 (1996), the panel held a gas station was not a dwelling, absent proof it was used or intended for human habitation, since a gas station "normally . . . would not be considered a 'dwelling.'"

The *Herrick* decision is instructive, even though we take issue with its analysis. There, defendant moved to correct an illegal sentence based on the alleged misclassification of a prior burglary as a person felony. Defendant argued the vacant house he burgled was not a dwelling because he knew no one lived there at the time of the crime. *Herrick*, 25 Kan. App. 2d at 472. The *Herrick* panel examined Illinois law, which defined "dwelling" for purposes of residential burglary as a place the "owners . . . actually reside *or in their absence intend within a reasonable period of time to reside*." (Emphasis added.) 720 ILCS 5/2-6; see 25 Kan. App. 2d at 477. The *Herrick* panel reasoned the building did not have to be presently used as a residence because a structure intended for use as a residence could be a dwelling as well. The panel found support for

8

this by noting the House Judiciary Committee had explained when considering the definition of "dwelling" in the Judicial Council recommendations it had received that:

> "The Sentencing Commission further subdivided 21-3715 based on whether the structure burglarized is a residence. The Criminal Law Committee accepts this subdivision but recommends use of "dwelling" rather than "residence" since dwelling is defined in 21-3110 to mean "a building or portion thereof, a tent, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." "Residence" is defined in 77-201 to mean "a place which is adopted by a person as the person's place of habitation and to which, whenever the person is absent, the person has the intention of returning . . . ."" 25 Kan. App. 2d at 478.

In the *Herrick* panel's view, the distinction between "dwelling" and "residence" was dispositive. It concluded the Illinois test was too constrained for the Kansas statute because Illinois focused on whether the structure was a "residence." The panel then decided the vacant house at issue was a dwelling because it "*was intended* for use as a home . . . ." (Emphasis added.) 25 Kan. App. 2d at 478. In other words, it held the building's residential character rendered it a "dwelling" despite the lack of any evidence at trial about the building's present intended use.

But the *Herrick* panel's rationale sets up a false choice between focusing on whether the structure is a "residence" and a test that focuses on the building's design rather than its actual use. One can imagine examples of places that could be intended for use as a human habitation, yet would not necessarily be considered a residence, such as a vacant hotel room or apartment available for rent. So even though the *Herrick* panel accurately observed that the Legislature desired "dwelling" to be more inclusive than "residence," this does not make a present, subjective intent an improper touchstone for determining dwelling status under the statute.

9

In Downing's case, the panel took a contrary view from *Herrick*. The *Downing* panel focused exclusively on the owner's subjective intent. It determined "[t]he statute is clear and unambiguous" and held that because Keesling's farmhouse was "not used or [was] not intended to be used as a place for human habitation, it does not meet the definition of a dwelling." *Downing*, 2017 WL 6397016, at *2. It cited the evidence that Keesling's family had not lived in the house for a long time and that Keesling did not have current plans to rent it. 2017 WL 6397016, at *2.

K.S.A. 2018 Supp. 21-5111(k) specifies that to qualify as a dwelling a place "*is* used or intended for use as a human habitation, home or residence." (Emphasis added.) This language signals in the present tense that the structure in question be used or intended for such use. See Webster's New World College Dictionary 126 (5th ed. 2016) (defining "be" as to "remain or continue").

K.S.A. 2018 Supp. 21-5807(a)(2) also supports a present-intent requirement to distinguish between a dwelling and a nondwelling structure, rather than simply using a building design approach. That statute makes burglary of a place illegal even if that place is "not a dwelling" and it gives examples where that crime can occur—enumerating building designs that would ordinarily be considered in the abstract as "intended for use as" habitations, such as manufactured homes and mobile homes. This strongly points to something else besides building design to differentiate dwelling from nondwelling burglaries.

We agree with the *Downing* panel. Absent proof the place burgled was used as a human habitation, home, or residence, the statute's plain language requires a showing of proof that, someone had a present, subjective intent at the time of the crime to use the place burgled for such a purpose. And based on that, the sufficiency question in Downing's case turns on whether the evidence at trial, viewed in the light most favorable

10

to the State, was sufficient for "a rational fact-finder" to find that the farmhouse was "intended for use" as a human habitation, home, or residence when the crime occurred. See *Howling*, 310 Kan. at 642. We hold that evidence is insufficient here.

Keesling's testimony that he would "like somebody to live there but . . . can't" is the best evidence favoring the State on this necessary element for a burglary of a dwelling and it comes up short. Intent suggests having something in mind as a purpose, plan, or design. See Webster's New World College Dictionary 756. At best, the State's evidence establishes only a preference—not a present intent. The panel correctly concluded Keesling's limited testimony was not enough to support Downing's conviction.

Finally, we briefly address the State's backup position that the panel should have remanded Downing's case to the district court for resentencing. The State claims the crime of burglary of a structure under K.S.A. 21-5807(a)(2) is a lesser included offense of burglary of a dwelling under K.S.A. 21-5807(a)(1), making remand appropriate. But this argument was not raised until the State's petition for review in our court. It should have been presented as an alternative argument to the lower courts. Because of that, we decline to address it on the merits. See *State v. Great Plains of Kiowa County, Inc.*, 308 Kan. 950, 953, 425 P.3d 290 (2018) (noting prudential rule that issue must be submitted to district court or Court of Appeals before Supreme Court will consider it). Adding to the State's difficulties, it failed to give any statutory analysis supporting its claim, which supplies yet another basis for declining to entertain the question at this late stage. *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002) ("'"A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point."'").

11

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed.

HENRY W. GREEN, JR., J., assigned.[1]

CHERYL A. RIOS, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:**  Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 116,629 vice Justice Nuss under the authority vested in the Supreme Court by K.S.A. 2018 Supp. 20-3002(c).

[2]**REPORTER'S NOTE:**  District Judge Rios was appointed to hear case No. 116,629 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.