IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,524

STATE OF KANSAS,
*Appellee*,

v.

DASHAUN RAY HOWLING,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 2018 Supp. 60-456(b) does not provide a basis for excluding a forensic interview of an alleged child sexual abuse victim that does not include opinions or other testimony based on scientific, technical, or other specialized knowledge.

2.

An appellate court reviews a sufficiency of the evidence challenge to determine whether, after reviewing all evidence in the light most favorable to the State, a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. It does not reweigh evidence, resolve evidentiary conflicts, or determine witness credibility while engaging in this review.

Review of the judgment of the Court of Appeals in an unpublished opinion filed October 13, 2017. Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed September 6, 2019. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

1

*Natalie Chalmers*, assistant solicitor general, argued the cause, and *Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Dashaun Howling challenges his conviction for aggravated criminal sodomy by attacking the district court's admission of videotaped testimony of the child, testimony about that interview, and the sufficiency of the evidence. Like the defendant in *State v. Ballou*, 310 Kan. __, __ P.3d __ (No. 116,252, this day decided), Howling challenged the admissibility of the videotaped testimony as expert testimony. Based on our decision in *Ballou*, and the additional grounds discussed here, we affirm the district court's decision to admit the evidence. We also reject Howling's argument that the evidence presented was insufficient to support the conviction.

FACTS AND PROCEDURAL BACKGROUND

The State charged Howling with rape and aggravated criminal sodomy based on allegations made by his then-four-year-old daughter (the child).

The State's charges arise out of the child's overnight visit with Howling on Saturday, June 20, 2015. She stayed with him at his then-residence in Pratt County, Kansas. Her maternal grandfather picked her up to return her to her mother the next day around 4 p.m.

On the Monday following her visit, while getting ready for a dance class that started at 6 p.m., the child asked her grandmother for medicine because her bottom was itching, tickling, and hurting. Her grandmother and mother checked the child's underwear and found blood. Her mother described the underwear as "covered in blood." The

2

grandmother asked the child whether she had been scratching herself there. The child said, "No." After dabbing the area with a tissue, the grandmother determined the blood was coming from the child's vaginal area. The child's mother asked the child what happened, and the child replied that her dad scratched her. The child explained Howling put medicine inside her when she stayed with him over the weekend. The child's mother and grandmother took her to the hospital on the advice of the mother's attorney in a custody case. The child's mother and grandmother testified to these facts, including the child's statements about her injuries.

At the hospital, a Sexual Assault Nurse Examiner (SANE) examined the child. When the SANE asked the child to explain why she was there, the child replied, "[D]addy scratched me." She said Howling put medicine on her, pointing to her vaginal area and rectum or anus area. She said Howling put medicine on her because she was bleeding a lot. The SANE told the child's mother and grandmother that law enforcement needed to be called. The SANE testified at trial about the child's statements.

A detective interviewed the child at the hospital and then, at trial, testified about the statements. The child told the detective she was in the hospital because her butt was bleeding. The child at first said she did not want to explain any more, but eventually reported Howling put his finger in her butt while she was sleeping in his house. She pointed to her bottom and her vaginal area to show where Howling put his fingers. She told the detective that Howling put white medicine from the refrigerator on her butt. She said she was bleeding and had a lot of blood.

After the detective completed her interview, the SANE again talked with the child and conducted a physical examination. The child reported her dad scratched her while she was asleep. She described that he "put two fingers in her pee and one in . . . what she called her butt." The child showed with her hand using two fingers and her thumb to

3

describe the motion Howling made. The SANE noted abrasions to the child's labia majora and minora, skin breakdown with redness on the child's clitoral hood, and discoloration in her rectum. The SANE testified the injuries observed were consistent with the history given by the child. The SANE also collected the child's underwear with blood on the crotch area. The SANE agreed that medically it was possible the child's injury did not bleed the entire time between when the child claimed to be injured during her visit with Howling and when her injuries were discovered on Monday. The SANE explained the injury may have reopened because of the child's activities, including swimming and showering, on the day her mother and grandmother discovered it.

Kasey Corbett later conducted a forensic interview of the child. Howling moved to exclude the video and Corbett's testimony before trial. The district court denied the motion.

Corbett has a high school education and training in the ChildFirst protocol for conducting an interview of young children who have allegedly been abused. The training involves a 40-hour course with a test at the end. Corbett's interview of the child was the 18th she had conducted after being trained in the protocol. Corbett addressed her training and education at trial. She described how she conducts an interview with a child who has alleged mistreatment. She laid the foundation for a redacted version of a video of the interview to be introduced at trial.

Before the video was published to the jury, Corbett testified the child told her Howling stuck his finger in the child's butt, making it tickle and bleed. The child pointed to a drawing to indicate the areas Howling touched and pointed to the child's own vaginal area to show where Howling touched.

During the video, the child pointed on her body to the area Howling touched, generally pointing to areas around her crotch. The video does not clearly show whether the child is pointing to her vaginal area, her anus or rectum, or both. The child's responses to open-ended questions focus on Howling touching her "butt." But the child responded affirmatively to questions suggesting Howling also vaginally penetrated her.

Howling cross-examined Corbett after the video was played. He questioned her qualifications and use of the ChildFirst protocol.

The child testified as the first witness at trial. Her trial testimony was not entirely consistent with her earlier statements. She testified Howling touched her "pee pee" on the inside of her body with his finger and made it bleed when she was staying at his house in Pratt. She denied Howling touched her anywhere else, but she did state later she was visiting Howling "[b]ecause he like[d] touching my butt." She confirmed she was 4 years old.

Howling called Dr. Jarrod Steffan, a clinical and forensic psychologist, as his only witness. Howling began with the type of questions expected to qualify a witness as an expert, such as inquiring into Steffan's background, education, training, publications, compensation for his services, and previous expert testimony. Steffan characterized his opinion as "commenting or providing information on the forensic interview and its impact on the reliability of the information obtained during the interview." Steffan addressed his concerns with the videotaped interview the jury saw. He noted Corbett failed to provide ground rules for the interview, such as letting the child know what to expect, what is and is not acceptable in answering questions, and establishing that the child knows the difference between truth and lies. In his view, ground rules let the child know it is okay to answer a question by saying she does not know, does not remember, or does not understand the question. Steffan testified the child would view Corbett as an

authority figure. Repeated questions by an authority figure might suggest to the child that Corbett felt an earlier answer was incorrect or not acceptable. He explained that preschool-aged children are suggestible, impressionable, and eager to please.

Steffan also expressed concern that some of Corbett's questions discounted the possibility someone or something else caused the child's injuries. Steffan pointed to specific examples from the interview. Steffan faulted Corbett's use of closed-end questions because they conveyed an impression that some type of information was expected rather than leaving open the possibility that there was no information to report.

Steffan specifically criticized Corbett repeatedly asking the child about touches to her vaginal area or crotch. The child had answered questions about being touched on her bottom. But Corbett kept asking questions about being touched on the front part in a direct, specific, and close-ended fashion.

Steffan further criticized Corbett for failing to account for needs the child expressed. He provided examples during the interview when the child said she was tired and later when she said, "I'm done." He also noted the child started to move around during the interview and became distracted and inattentive. This creates a danger the child's responses at this point may not be true because the child may simply respond to escape a situation she finds unpleasant.

On cross-examination by the State, Steffan confirmed his opinion was limited to an evaluation of the methodology Corbett used in conducting the forensic interview. Steffan acknowledged he was not offering an opinion about whether the child was telling the truth during the investigation.

6

The jury convicted Howling of aggravated criminal sodomy but acquitted him of rape.

A panel of the Court of Appeals affirmed. *State v. Howling*, No. 116,524, 2017 WL 4561832 (Kan. App. 2017). The panel was persuaded by another panel's decision, *State v. Ballou*, 2017 WL 3575610. The *Ballou* panel rejected a similar challenge, reasoning a video of a forensic interview is not expert testimony and does not fall within K.S.A. 2018 Supp. 60-456. 2017 WL 3575610, at *10. The panel here reached the same conclusion and affirmed the district court's ruling allowing the jury to view the video. *Howling*, 2017 WL 4561832, at *2-3. The *Howling* panel next considered whether the evidence was relevant and admissible and determined it was both. 2017 WL 4561832, at *3-4.

The panel then turned to Howling's sufficiency challenge. The panel characterized Howling's challenge as focusing on the failure of the child's caregivers to observe any injury for more than 24 hours when she was in their care and the child's inconsistent statements about where she was touched. The panel found sufficient evidence in the record to support Howling's aggravated criminal sodomy conviction. 2017 WL 4561832, at *4-5.

We granted Howling's petition for review.

ANALYSIS

ISSUE 1: *The trial court did not err in admitting the interview.*

Howling moved to exclude any evidence of the forensic interview in his fourth motion in limine. The basis for his motion is not entirely clear. He cited no legal authority for excluding the evidence. He instead largely recited points made in his own expert's

opinion criticizing Corbett's questioning of the child. Howling also impugned Corbett's qualifications to conduct such an interview. He attacked Corbett's alleged failure to follow the protocol in which she had been trained. He concluded Corbett's failure to follow the protocol renders the interview unreliable and asked the court to not admit "any evidence of the forensic interview" in the State's case-in-chief. Howling never cited a rule of evidence or case supporting his request, although the discussion of Corbett's qualifications and reliability tend to suggest Howling intended to invoke some rule related to expert testimony.

The district court denied Howling's motion at a hearing. The district court reviewed the evidence both sides presented. It addressed Howling's expert's testimony:

> "Dr. Steffan in his testimony essentially indicated that based on those concerns that he testified regarding that that diminishes the reliability of the results of the interview or the information that was obtained from that interview, but I would note that *he specifically declined to give an opinion that the interview was invalid*." (Emphasis added.)

The district court reviewed this court's opinion in *State v. Gaona*, 293 Kan. 930, 270 P.3d 1165 (2012), noting the case was distinguishable but factually similar because both involved "a defense witness . . . question[ing] the protocol in the conduct of the interview." After this discussion, the district court ruled that the interview was sufficiently reliable to be admissible and the issues Howling presented went to the weight of the interview and information obtained during the interview. Howling requested a continuing objection at trial. The district court granted "a continuing objection to the testimony of Ms. Corbett regarding the forensic interview."

On appeal to the Court of Appeals, Howling cited K.S.A. 60-456(b) as governing the admissibility issues complained of here. Howling's framing of what his request

8

encompassed varied across his briefing. To the district court, he asked to exclude "evidence of the forensic interview" from the State's case-in-chief. Before the Court of Appeals panel, he identified his central question as "whether the forensic interview of [the child] conducted by Kasey Corbett was sufficiently done within the applicable protocol to allow evidence of the interview and the statements elicited during it to be sufficiently reliable for admission into evidence at trial." He argued that although Corbett offered no opinion on the child's truthfulness, the totality of Corbett's testimony was designed to convey the truthfulness of the child's testimony. He then attacked the interview protocol Corbett used and Corbett's application of that protocol. He concluded the statements resulting from the interview were rendered unreliable by Corbett's failure to adhere to the ground rules Howling's expert said were necessary.

Before us, Howling challenges the panel's conclusion that the forensic interview was not expert testimony. He also reasserted his argument that Corbett breached the interview protocol she described at trial and that her failure to do so rendered the entire interview unreliable.

### 1.1 *A forensic interview is not expert testimony.*

As explained in *Ballou*, this day decided, a forensic interview standing alone is not expert testimony. *Ballou*, No. 116,252, 310 Kan. at __ (slip op. at 21-22). The interview here, like the one in *Ballou*, offered neither opinion nor factual testimony. The interviewer did not give evidence or bear witness during the interview. She offered no opinion on anything. She engaged in a fact-finding process to obtain information about what happened to cause the child's injury. To that end, she asked the child questions. Any statements she made were when she was engaged in dialogue to obtain information from the child. Nothing Corbett said or did in the interview itself constituted testimony or testifying, nor did any of it constitute an opinion as contemplated by K.S.A. 2018 Supp.

9

60-456(b). Thus, as in *Ballou*, K.S.A. 2018 Supp. 60-456(b) does not provide a basis for excluding Corbett's interview of the child, which did not include opinions or other testimony based on scientific, technical, or other specialized knowledge.

Howling provided no other basis for excluding the interview to the district court or Court of Appeals. On review, he tries to make a relevance argument he failed to make below. He now argues the probative value of evidence is eroded if the evidence is not reliable. But his failure to argue relevance below and to argue now why we should consider the issue raised for the first time here places this argument beyond our review. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016).

### 1.2 *Corbett did not give expert testimony.*

Howling moved in limine to exclude "evidence of the interview of [the child]." This language appears broad enough to encompass Corbett's testimony about the interview. The panel did not address any issues arising out of Corbett's testimony because it appears to have read Howling's motion as limited to admission of the videotaped interview. See 2017 WL 4561832, at *2-3. Yet Howling's motion and briefing encompass more than the video. But considering the broader context of Corbett's testimony does not change our conclusion because the underlying legal issues are the same as those we considered in discussing the admissibility of the interview.

Like the interview, Corbett's testimony did not include any opinion. Her testimony was limited to factual information. She detailed her training and job position and explained she performs the dual functions of a family advocacy coordinator and a forensic investigator. In the child's case, she acted first as the child's medical advocate during the SANE exam and then conducted a forensic interview the following morning. She explained the recording procedures and, in doing so, laid the necessary foundation

10

for the admission of the video. Before the recording was played, the State asked questions about the interview. At this point, Howling's attorney renewed his objection based on the motion in limine and requested a continuing objection when it was denied. Corbett then described the interview, after which the State published the video. Nowhere in this exchange did Corbett offer an opinion or a conclusion about the facts.

Howling cross-examined Corbett, using the opportunity to call attention to Corbett's minimal training, lack of experience when she interviewed the child, and lack of other credentials. He also asked questions to draw attention to aspects of Corbett's approach that would be criticized by his expert's testimony later in trial, such as asking about the use of open-ended and leading questions. On redirect, Corbett explained she generally uses open-ended questions, although she might deviate in some circumstances. She did not specifically address whether she did this in interviewing the child, and if so, why. In this discussion, she went into the theory behind her approach to the interview. But she still offered no opinion or conclusion in doing so. Her testimony was admissible. See K.S.A. 2018 Supp. 60-456.

1.3 *The purpose of a taint hearing was accomplished here.*

Howling did not specifically request a taint hearing. But his invocation of "reliability" is reminiscent of the issues discussed when a taint hearing is requested. See *State v. Gilliland*, 294 Kan. 519, 545-46, 276 P.3d 165 (2012); see also *Ballou*, No. 116,252 (slip op. at 26). As a result, some discussion of taint hearings is in order.

We note that we previously refused to issue an advisory opinion on whether Kansas courts must take on a gatekeeping role and hold a taint hearing to consider a challenge to a child witness' testimony before trial. In particular, we declined to consider the propriety of a taint hearing when a trial judge has made the ultimate finding mandated

11

by those courts requiring a taint hearing, i.e., that the questioning of the child witness was not unduly suggestive or leading. See *Gilliland*, 294 Kan. at 546-47.

Here, the district court held a hearing on Howling's fourth motion in limine in which it heard testimony from Howling's expert, Steffan; Corbett; and Kelly Robbins, who trained Corbett in the ChildFirst protocol. After hearing from both sides, the district court found the interview sufficiently reliable to be admissible. Because the district court here performed its gatekeeping function to consider the reliability of the child's statements resulting from the forensic interview, no separate taint hearing was required. See *Gilliland*, 294 Kan. at 546-47. As a result, we need not consider in this case whether to adopt a taint hearing process in Kansas.

ISSUE 2:  *Sufficient evidence supports Howling's aggravated criminal sodomy conviction.*

The jury convicted Howling of aggravated criminal sodomy; they acquitted him of rape. To prove the offense of aggravated criminal sodomy, the State had to prove Howling knowingly engaged in sodomy with a child under 14 years of age when he was more than 18 years of age on or about a specific date alleged by the State and that the act occurred in Pratt County, Kansas. Sodomy as charged here meant anal penetration, however slight, of a female by any body part or object. See *State v. Dern*, 303 Kan. 384, 396, 362 P.3d 566 (2015). Howling argues the State failed to prove these elements.

We review a sufficiency of the evidence challenge to determine whether, after reviewing all evidence in the light most favorable to the State, a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh evidence, resolve evidentiary conflicts, or determine witness credibility while engaging in this review. *State v. Fitzgerald*, 308 Kan. 659, 666, 423 P.3d 497 (2018).

12

Applying this standard and viewing the evidence in the light most favorable to the State, the State proved the child was under 14 years of age when Howling knowingly anally penetrated her with his finger. The child testified she was four. Various witnesses testified the child told them Howling scratched her. A detective testified the child told her she was in the hospital because her butt was bleeding and said Howling touched her bottom and vaginal area. And the child told the SANE that Howling "put two fingers in her pee and one *in . . .* what she called *her butt*." (Emphases added.) The SANE testified the child's injuries were consistent with this reported history. This evidence supports the jury's conclusion that Howling anally penetrated the child with a body part or object. The State established the act occurred sometime during the overnight visit on June 20-21 in Pratt County. Two State witnesses testified that Howling was more than 18 at the time. Thus, the evidence viewed in the light most favorable to the State supports a rational fact-finder finding Howling guilty beyond a reasonable doubt.

Howling makes several complaints about the evidence. He first faults the delayed discovery of the child's injuries. He points to opportunities he believes should have led to earlier discovery if he had in fact injured the child, such as the child's grandfather wiping her bottom, grandmother giving her a bath, and mother helping her dress for swimming and showering together. Second, he notes that no blood was discovered until late afternoon. Third, he argues the child's complaints were inconsistent with her reports.

Howling's arguments ignore the SANE's testimony that the child's activities on Monday afternoon could have caused the abrasions to reopen and bleed again and her testimony that the child's injuries were consistent with the conduct the child reported. And, while the child never clearly testified at trial that Howling touched her bottom, she did testify she visited him because he liked to touch her butt. And her earlier statements, which were admitted, conveyed Howling anally penetrated her. The jury heard this

13

evidence. And Howling presented the same arguments at trial, asking the jury to determine the inconsistencies and gaps in time meant the State had not met its burden.

Howling essentially asks us to reweigh the evidence, resolve evidentiary conflicts, and assess witness credibility to conclude otherwise. But that is the role of a jury, not an appellate court. See *Fitzgerald*, 308 Kan. at 666. And, in the light most favorable to the State, evidence supported his conviction for aggravated criminal sodomy.

CONCLUSION

We affirm the Court of Appeals and the district court.